[Civ. No. 66765. Second Dist., Div. Four. May 20, 1983.]

SHELDON ROSENFIELD et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MAURICE L. SILVER, Real Party in Interest.

COUNSEL

Sheldon Rosenfield, in pro. per., Rosenfield & Silver and Jamie Beth Fox for Petitioners.

Patterson, Ritner, Lockwood, Zanghi & Gartner and James M. Steck for Real Party in Interest.

**OPINION**

**WOODS, P. J.**—This proceeding in mandate presents the question whether the requirements of Code of Civil Procedure section 1295, subdivisions (a) and (b),[1] concerning waiver of the patient's right to jury trial, are mandatory or advisory.

For the reasons discussed below, we conclude that the failure of a health care contract to contain the advisements specified in subdivisions (a) and (b) of section 1295 automatically renders unenforceable the arbitration provisions of such contract; section 1295 is mandatory and preempts the general provisions of section 1281.2 in the area of medical malpractice arbitration agreements.

The facts are simple and not in dispute. While under the care of defendant physician, plaintiff executed on three separate occasions (Oct. 3, 1978, Nov. 11, 1978, and Jan. 19, 1981) a printed form provided by defendant entitled "Treatment and Arbitration Agreement." The agreements, all identical in printed form and content, provide with regard to arbitration: "In the event of any controversy between the PATIENT, . . . and the ATTENDING PHYSICIAN, . . . involving a claim in tort or contractual, the same shall be submitted to arbitration." Following this is a brief description of the procedure for initiation of arbitration claims pursuant to "Title 9 of the Code of Civil Procedure" and an advisement that the patient may "withdraw" from the arbitration provision of the agreement by giving written notice within 30 days of execution. The agreements do not set forth any of the specific advisements required by section 1295, subdivisions (a) and (b).

Plaintiff did not exercise his right to withdraw from the arbitration provision, but filed a civil action for medical malpractice after suffering severe aggravated injuries. Plaintiff alleged that defendant had negligently failed to diagnose his reported hip discomfort as a fracture on January 19, 1981. Defendant moved respondent court to stay the action and compel arbitration pursuant to the agreements executed by plaintiff. The motion was based solely upon the existence of the compulsory arbitration provisions in the agreements and no evidence was offered as to the circumstances surrounding the execution thereof. Plaintiff filed opposition which pointed out that the agreements did not contain the formal advisements required by section 1295 and argued that such

---

[1]All references to code sections are to the Code of Civil Procedure unless otherwise specified.

nonconformity rendered unenforceable the arbitration provisions. Plaintiff offered no evidence as to the circumstances surrounding execution of the agreements.

Respondent granted the motion to compel arbitration and stayed the civil action. Plaintiff filed his petition with this court on October 27, 1982, and we issued the alternative writ.

I

Since its enactment in an extraordinary session of the Legislature in 1975, section 1295 has been codified in part 3, chapter 2, title 9.1 of the Code of Civil Procedure, entitled "Arbitration of Medical Malpractice." It provides:

"(a) *Any* contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider *shall* have such provision as the first article of the contract and *shall* be expressed in the following language: 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.'

"(b) Immediately before the signature line provided for the individual contracting for the medical services *must* appear the following in at least 10-point bold red type: 'NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT.'

". . . . . . . . . . . . . . . . . . . . . .

"(e) Such a contract is not a contract of adhesion, nor unconscionable nor otherwise improper, where it complies with subdivisions (a), (b) and (c) of this section." (Italics added.)

The lower court concluded that while subdivisions (a) and (b) employ the mandatory terms "shall" and "must" relative to the inclusion of specified jury-waiver advisements, subdivision (e) shields conforming contracts from attack

on grounds of adhesion, unconscionability or "other impropriety," but does not expressly state that nonconforming arbitration provisions are invalid.

Section 1281.2, which has been in effect in substantially its present form since 1961, is the general statute controlling the enforceability of arbitration provisions. It provides, in pertinent part, that a court shall order arbitration if it "determines that an agreement to arbitrate the controversy exists, unless it determines that: . . . (b) Grounds exist for the revocation of the agreement."

No reported case has addressed the issue of whether section 1295 wholly preempts section 1281.2 as to the enforceability of nonconforming medical malpractice arbitration contracts.

■   A fundamental rule of statutory construction is that courts should ascertain the intent of the Legislature from a reading of the statute as a whole so as to effectuate its purpose. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)   ■   Courts should first look to the plain dictionary meaning of the words of the statute and their juxtaposition. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1].)   ■   The terms "shall," "must," and "all" (in subds. (a) and (b) of § 1295) are ordinarily "used in laws, regulations or directives to express what is mandatory." (Webster's New Internat. Dict. (3d ed. 1966) p. 2085, col. 2.) This is particularly so where to construe it otherwise would render it ineffective and meaningless. (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 134 [142 Cal.Rptr. 325].)   ■   "[E]very word, phrase or provision is presumed to have been intended to have a meaning and perform a useful function" (*Mahdavi* v. *Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 334 [136 Cal. Rptr. 421]) and a statute should be so construed where possible. (*J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 36-37 [160 Cal.Rptr. 710, 603 P.2d 1306].)

■   The very requirement that jury-waiver advisements be included in "*all*" medical service arbitration contracts in specified language, and be in prominent locations in 10-point bold red type, evidences an implicit legislative determination that they are critical to safeguard against patients unknowingly waiving their constitutional right to jury trial.

To conclude that section 1281.2 takes precedence over section 1295, setting aside an arbitration agreement only if grounds exist for revocation of that agreement, would be plainly inconsistent with the Legislature's intent expressed in section 1295. The Legislature has specified the manner in which the communication of significant contractual consequences must be made to a patient. A clear understanding of those consequences assures the enforceability of the agreement. "The enforceability of such a contract . . . depends upon whether

the terms are beyond the reasonable expectations of an ordinary person . . . ." (*Ramirez* v. *Superior Court* (1980) 103 Cal.App.3d 746, 752-753 [163 Cal.Rptr. 223].) If an arbitration agreement does not contain the warnings prescribed in section 1295, factual issues are then created concerning the parties' reasonable expectations and whether the contract is in fact oppressive or unconscionable. A legislative determination to avert the creation of those issues should not be ignored by an enfeebling interpretation of the language of the statute.

## II

Nor are we persuaded that a different result is compelled by virtue of the fact that the medical malpractice act was adopted for the apparent benefit of the medical community. Section 1295 was enacted in an extraordinary session of the Legislature called by the Governor to alleviate the escalating cost of medical malpractice insurance premiums (and resulting problems of health care availability) due to the surge of medical malpractice actions and high jury awards. (See 7 Pacific L.J. (1976) 544-545, 550-551; Proclamation by Governor Convening the Legislature in Second Extraordinary Session of 1975, 10 Journal of the Senate, 1975-1976 (2nd Ex. Sess.) pp. 2-3.) However, the advisement requirements of subdivisions (a) and (b) are clearly intended to promote patients' awareness that execution of the contract will constitute a waiver of certain constitutional rights. While this state has an interest in promoting good health care to its citizens, it has an equal interest in safeguarding citizens from unknowing waivers of the right to jury trial in civil cases.

## III

Finally, real party in interest contends that general principles of contract law require parties to be held to perform contractual obligations and thus compulsory arbitration provisions are enforceable unless proven by the patient to be adhesive or unconscionable. We disagree. The Legislature has in other areas of consumer protection enacted statutes requiring otherwise valid contracts to comply with formal advisory requirements in order to be enforceable.

Section 17500.3 of the Business and Professions Code provides protection to consumers in the area of home solicitation of contracts for goods and services. The consumer may rescind such a contract if the solicitor does not comply with the formal advisory requirements specified by the statute. The solicitor's failure to comply also provides for punitive damages and criminal prosecution for intentional noncompliance. Also, Business and Professions Code section 9884.9 provides that an estimate of automobile repair costs for labor and parts be provided to the customer in writing, and authorization to proceed must be given before work may be done or any charges accrued. Although not strictly

analogous to the statute under construction by this court, Business and Professions section 9884.9 is another instance of legislative intervention in contractual relationships where important public policy interests require protection.

Let a peremptory writ of mandate issue directing respondent to vacate its order of September 27, 1982, in Los Angeles Superior Court case No. C 393293, entitled David Wright v. Maurice L. Silver, M.D., which granted the motion of defendant to compel arbitration and stay that action, and to make a new and different order denying that motion. Arbitration proceedings are hereby ordered stayed until this opinion shall become final as to this court.

McClosky, J., and Amerian, J., concurred.