Filed 12/17/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LISA COX, | B279476 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC094661) |
| v. | |
| ARAM BONNI, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Frank J. Johnson and Huey P. Cotton, Judges. Affirmed.

Law Offices of Ramin R. Younessi, Ramin R. Younessi and David Z. Sohn for Plaintiff and Appellant.

Carroll, Kelly, Trotter, Franzen, McKenna & Peabody, Richard D. Carroll, David P. Pruett; Schmid & Voiles, Denise H. Greer and Kathleen D. McColgan for Defendant and Respondent.

_____

Plaintiff Lisa Cox (plaintiff) appeals from the judgment confirming an arbitration award in favor of defendant and respondent Aram Bonni, M.D. (defendant), whom she sued for medical malpractice following a hysterectomy. Plaintiff had moved successfully to vacate the award based on the neutral arbitrator's failure timely to disclose his past dealings and ex parte communications with defendant's counsel. Defendant thereafter moved for reconsideration. The arbitrator himself appeared at the hearing on the motion, arguing that plaintiff forfeited any objection to his untimely disclosures by not raising the issue until the arbitration was over, and that he disclosed one of the two challenged ex parte communications in the written award itself. The trial court granted reconsideration based on the arbitrator's arguments and confirmed the award without further briefing or hearing.

Plaintiff raises three challenges on appeal. First, she challenges the trial court's order compelling the parties to arbitrate, arguing that the arbitration agreements did not conform to statutory requirements, that she did not read and understand the agreements when she signed them, and that defendant waived his right to arbitrate by litigating the case for more than three months before asserting his right to arbitrate. Second, she challenges the trial court's confirmation of the arbitration award, arguing that the previous order vacating the award was correct. Lastly, she challenges the trial court's grant of reconsideration, arguing that defendant's motion was not based on new facts or law, and the trial court erred in permitting the arbitrator to present argument.

This case involves unfortunate conduct by plaintiff's counsel and the neutral arbitrator in the proceedings on review

2

before us. This conduct includes omissions of key facts and misrepresentations by plaintiff's counsel that would allow us to deem plaintiff's challenges as forfeited. This conduct also includes actions by the neutral arbitrator that understandably could cause someone to question his impartiality. This having been said, we conclude that none of plaintiff's challenges is meritorious and thus affirm the judgment.

## BACKGROUND

### A. Complaint, discovery, and demand for arbitration

On August 24, 2011, plaintiff filed a complaint for medical malpractice against defendant and Weight Loss Centers, a business entity with whom defendant was affiliated, alleging that defendant negligently performed a hysterectomy on plaintiff. On September 2, 2011, plaintiff amended the complaint to add her husband John Cox as a plaintiff, alleging damages from loss of consortium.[1]

Defendant answered the complaint on December 14, 2011. At the same time, defendant served 12 sets of discovery requests on plaintiff and her husband, including form and special interrogatories, requests for production of documents, and requests for admissions.

On February 8, 2012, defendant's counsel sent a letter to plaintiff's counsel attaching two physician-patient arbitration

---

[1] We granted John Cox's request to dismiss his appeal and he is not a party here. For simplicity, in this opinion we use "plaintiff" in the singular when describing the arbitration and trial court proceedings. In so doing we do not intend to suggest that John Cox was not also a party to those proceedings.

agreements signed by plaintiff and a representative of defendant's medical corporation on August 28 and September 10, 2010, which defendant's counsel claimed to have discovered while reviewing plaintiff's medical records. Defendant's counsel demanded arbitration in light of the agreements. According to defendant's counsel, plaintiff's counsel never responded to the demand.

The next day, February 9, defendant served notices of deposition on both plaintiff and her husband. On February 16, 2012, defendant served four more sets of interrogatories on plaintiff and her husband. The caption page for each of the February 16 sets stated "In The Matter Of The Arbitration Between" the Coxes, defendant, and Weight Loss Centers (boldface and some capitalization omitted).

On March 16, 2012, defendant applied ex parte for an order continuing the trial date, which the trial court granted. The record on appeal does not contain a reporter's transcript or minute order from any proceeding related to that ex parte application, but plaintiff's counsel asserted in a later declaration that defendant did not "mention . . . a desire or intent to arbitrate" at the hearing.

## B. Petition to compel arbitration

On April 6, 2012, defendant filed a verified petition to stay the trial court proceedings and compel the parties to arbitration. Plaintiff opposed the petition, arguing that defendant had waived his right to arbitrate by unduly delaying his petition and by engaging in litigation and discovery inconsistent with an intent to arbitrate. Plaintiff further argued that defendant had failed to prove that certain language in the arbitration agreements had been presented to plaintiff in bold red type as required by

4

Code of Civil Procedure section 1295, subdivision (b),[2] and that plaintiff was not aware that the documents she signed included an arbitration provision.  Plaintiff provided a declaration in support of her opposition claiming, among other things, that at the time of her medical treatment, she did not read the documents presented to her by defendant's receptionist and that the receptionist insinuated that plaintiff should fill them out quickly.

Defendant filed a reply supported by defendant's counsel's declaration purporting to attach a color copy of the September 10 arbitration agreement, and stating that counsel would provide a color copy of the August 28 agreement at the hearing on the petition.

The hearing on the petition, held June 7, 2012, focused on plaintiff's argument that defendant had waived his right to arbitrate.  Neither the parties nor the court raised or addressed plaintiff's arguments regarding the red type or her lack of understanding of the arbitration agreements.  Following the hearing, the trial court ordered the parties to arbitration, finding that plaintiff had not shown prejudice from defendant's delay in asserting his right to arbitrate.

C.    **The arbitration**

The parties proceeded to arbitration.  Plaintiff and defendant each chose a party arbitrator; the defendant party arbitrator was replaced when its initial choice died during the proceedings.  The party arbitrators jointly selected a neutral

---

[2] Undesignated statutory citations are to the Code of Civil Procedure.

5

arbitrator as the third arbitrator on or about September 5, 2012. The neutral arbitrator was affiliated with Judicate West, a provider of alternative dispute resolution services, which also served as the administrator of the arbitration.

In October 2014, the law firm of Carroll, Kelly, Trotter, Franzen, McKenna & Peabody (Carroll Kelly) substituted in as defendant's counsel. Notice of the substitution was served on plaintiff on October 28, 2014. On January 23, 2015, Judicate West provided written disclosures to the parties listing the neutral arbitrator's previous work as an arbitrator or mediator in cases involving Carroll Kelly.

The arbitration hearing took place in October 2015. On or about November 11, 2015, the arbitration panel issued an interim award finding in favor of defendant and awarding nothing to plaintiff and her husband, with the plaintiff party arbitrator dissenting. The interim award notified the parties that if they wished to request a hearing regarding costs pursuant to section 998, they must do so within five days.

On November 25, 2015, the neutral arbitrator issued a document entitled "Final Arbitration Award" (boldface and some capitalization omitted) stating that defendant had advised the panel by e-mail that defendant would not seek costs pursuant to section 998. The document attached the interim award, stating that "the award may now be considered final for all purposes."

On December 31, 2015, plaintiff's counsel e-mailed the neutral arbitrator informing him that on the weekend before the arbitration hearing, defendant's counsel told plaintiff's counsel that he had spoken to the neutral arbitrator about the neutral arbitrator's availability during the arbitration. Plaintiff's counsel asked the neutral arbitrator "to confirm whether or not you had

any telephonic or in person discussions outside of the Judicate West office with [defendant's counsel] either the weekend preceding the arbitration or during the arbitration." The neutral arbitrator replied by e-mail that the week before arbitration he was in a mediation on a different case at which defense counsel was present. The neutral arbitrator asked defense counsel if the defense was "going to be ready to go on Monday." Defense counsel said yes and asked if the neutral arbitrator would be available all five days the following week, to which the neutral arbitrator also said yes. The neutral arbitrator said that was the extent of the conversation, and he had no further conversations with defense counsel about plaintiff's case. The neutral arbitrator ended the e-mail stating, "You are a competent young professional with hopefully a long and successful career ahead of you. You need to be careful who you accuse of engaging in unethical behavior."

On January 9, 2016, plaintiff's counsel informed the neutral arbitrator that plaintiff's counsel had not received a copy of the e-mail referenced in the written final award in which defendant's counsel declined to seek costs. Plaintiff's counsel requested that the neutral arbitrator provide the e-mail, which the neutral arbitrator did. Dated November 17, 2015, it read, "On behalf of the defense, we waive all costs associated with the award."

## D.    Motion to vacate award

Plaintiff moved to vacate the arbitration award on the basis of the neutral arbitrator's conduct during the proceedings. Plaintiff argued that the neutral arbitrator had failed to disclose his prior arbitrations and mediations involving Carroll Kelly and also had failed to disclose the two ex parte communications with

7

defense counsel about which plaintiff's counsel had inquired on December 31, 2015 and January 9, 2016. Plaintiff further argued that the neutral arbitrator's other disclosures were improper, that the neutral arbitrator tried to interfere with the plaintiff party arbitrator's dissent to the award, that the neutral arbitrator improperly included Judicate West's president in discussions regarding the plaintiff party arbitrator's dissent, and that the neutral arbitrator threatened plaintiff's counsel in his e-mail response to the inquiry regarding ex parte communications. Plaintiff's counsel filed a declaration in support of the motion to vacate, stating among other things that his office never received any disclosures from the neutral arbitrator regarding his prior involvement with Carroll Kelly. The plaintiff party arbitrator also filed a declaration stating that he never received such disclosures either.

Defendant opposed the motion, arguing among other things that the neutral arbitrator had made all required disclosures, and attaching in support the January 23, 2015 disclosures listing the neutral arbitrator's previous involvement with Carroll Kelly. In reply, plaintiff argued that the disclosures lacked a proof of service or declaration from the purported sender authenticating them and thus were inadmissible.

On the day of the hearing on the motion, defendant filed a declaration from an employee of Judicate West asserting that he had sent the January 23 disclosures to the parties. The declaration attached another copy of the disclosures along with the proof of service. The trial court ordered the parties to provide supplemental briefing addressing the timing of the disclosures and whether plaintiff's counsel received them.

Plaintiff in her supplemental brief acknowledged for the first time that her counsel received the January 23 disclosures, and plaintiff's counsel so admitted in an attached declaration, but plaintiff argued that the disclosures were untimely.

After reviewing the supplemental briefing and hearing argument, the trial court vacated the award. The court found that the January 23 disclosures, made three months after Carroll Kelly substituted in, were untimely, and defendant "never addresse[d] head on the reason the disclosure was made so late." The court further ruled that, although the two ex parte communications between the neutral arbitrator and defendant's counsel pertained to "administrative matters," the neutral arbitrator failed to disclose them and thus vacation was proper under section 1286.2, subdivision (a)(6) or, alternatively, subdivision (a)(3).[3]

---

[3] The trial court's tentative ruling, which the court adopted as its final order following the hearing, contained two parts, one drafted before the parties provided supplemental briefing and one drafted after. The result is confusing, because the first part reflected the trial court's finding at the time, in light of the declarations of plaintiff's counsel and her party arbitrator, that the neutral arbitrator had *never* disclosed his relationship with Carroll Kelly, whereas the second part reflected the trial court's later finding that the neutral arbitrator had provided the disclosures, but they were untimely. Also, despite plaintiff's counsel's admission to the contrary in the supplemental briefing, the second part continued to state that plaintiff's counsel denied receiving the January 23 disclosures.

## E.     Motion for reconsideration

Defendant moved for reconsideration of the order vacating the award.  Defendant argued that plaintiff had shifted positions in her supplemental briefing and had raised for the first time the argument that the neutral arbitrator's disclosures were untimely.  Defendant offered purportedly new evidence in the form of declarations attempting to explain why the neutral arbitrator's disclosures were filed late and to show that defense counsel had no improper ex parte communications with the neutral arbitrator.  One declaration, from the neutral arbitrator's case manager at Judicate West, claimed that the case manager first learned of Carroll Kelly's substitution on December 9, 2014, and verified the substitution around January 12, 2015, at which point Judicate West generated the disclosures that the neutral arbitrator reviewed and signed on January 23, 2015.

Defendant further argued that *Baxter v. Bock* (2016) 247 Cal.App.4th 775 (*Baxter*), published the day before defendant filed his supplemental brief, constituted new law justifying reconsideration.  Defendant also argued that plaintiff had forfeited her objection to the neutral arbitrator's late disclosures by not raising it until after the arbitration award had issued.

Plaintiff opposed the motion, arguing that defendant's "new" facts could have been presented in opposition to the motion to vacate, *Baxter* relied on existing case law, and the trial court properly considered plaintiff's argument that the disclosures were untimely.

At the beginning of the hearing on the motion for reconsideration, the trial court issued a tentative ruling denying the motion.  The court then heard argument.  In addition to the parties, the neutral arbitrator himself appeared in pro per,

10

stating, "It's my professional ox that's being gored here."  The neutral arbitrator argued that he properly disclosed the ex parte communication regarding costs because he mentioned it in the final award provided to the parties.  He further argued that, although his disclosures regarding Carroll Kelly were untimely, plaintiff did not seek to disqualify him once plaintiff received the disclosures, and only raised the issue after the neutral arbitrator ruled in defendant's favor.

The trial court stated that it was "satisfied that there's sufficient basis for reconsideration, both legally and factually, and I'm going to grant the request for reconsideration."  The court then confirmed the arbitration award without further hearing or evidence.  When plaintiff's counsel asked the court to explain why it had reversed its position from the tentative ruling, the court said, "The argument, as articulated by [the neutral arbitrator], makes clear that there was no prejudice and that the untimeliness of the initial . . . disclosure [of the neutral arbitrator's prior relationship with Carroll Kelly] was matched by the untimeliness of the objection to that disclosure."  The court continued:  "[W]ith respect to [the] ex parte communication, that . . . was disclosed within five days.  That point was never brought to the court's attention."

The trial court entered judgment in favor of defendant. Plaintiff timely appealed.

# DISCUSSION

## A.    The Trial Court Properly Granted The Motion To Compel Arbitration

### 1.    Standard of Review

An order granting a petition to compel arbitration may be reviewed on appeal from a subsequent judgment on the award. (*Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79, 94; §§ 1294, subd. (d), 1294.2.)  We review for substantial evidence a trial court's determination that a valid arbitration agreement exists between the parties.  (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 185.)  We review de novo the trial court's interpretation of the agreement in the absence of any factual dispute or conflicting evidence regarding the terms of the agreement.  (*Ibid.*)  The determination of whether a party has waived the right to arbitrate is generally a question of fact, also reviewed under the substantial evidence standard.  (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).)  Under this standard, "[w]e infer all necessary findings supported by substantial evidence [citations] and 'construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance.' "  (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443.)

### 2. Plaintiff Fails to Show Error in the Trial Court's Implicit Finding that the Arbitration Agreement Satisfied the Requirements of Section 1295, Subdivision (b)

Section 1295 contains mandatory provisions for medical malpractice arbitration agreements. (See § 1295, subds. (a), (b); *Rosenfield v. Superior Court* (1983) 143 Cal.App.3d 198, 200 (*Rosenfield*).) As relevant here, subdivision (b) requires that certain language appear immediately before the signature line of the agreement "in at least 10-point bold red type."[4] A medical malpractice arbitration agreement that fails to contain the mandatory provisions of section 1295, including the requirement of subdivision (b), is unenforceable. (*Rosenfield*, *supra*, 143 Cal.App.3d at p. 200.)

Plaintiff does not dispute that the arbitration agreements at issue here contained the language required under section 1295, subdivision (b), but argues that defendant failed to present evidence that the language appeared in red type. Plaintiff asserts that defendant "should have produced the original [agreement] with [plaintiff's] ink signature. Without this original document, [defendant] cannot meet his burden to prove the existence of a valid arbitration agreement."

---

[4] The language required to be in bold red type is: " 'NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT.' " (§ 1295, subd. (b).)

Plaintiff's argument is copied nearly verbatim from her opposition to the petition to compel arbitration filed in the trial court. Plaintiff fails to address, or even mention, that in response to her opposition, defendant filed a declaration from his counsel purportedly attaching a color copy of one of the two arbitration agreements, and stating that counsel would provide a color copy of the second agreement at the hearing on the petition to compel. Plaintiff's rehashing of her trial court arguments, without acknowledgement and discussion of subsequent events and developments, is grounds to deny her challenge. (See *Pacific Corporate Group Holdings, LLC v. Keck* (2014) 232 Cal.App.4th 294, 313, fn. 16 (*Pacific Corporate*) [appellate court may deem contention abandoned when appellant fails " 'to completely and fairly summarize the evidence supporting the [trial] court's findings and judgment' "].)

Plaintiff further obscures the issue by not providing in the appellant's appendix a color copy of the agreement attached to defendant's counsel's declaration, making it impossible to confirm plaintiff's claim that the agreement lacked the red type. Nor does plaintiff address, or the record disclose, whether defendant provided a color copy of the second agreement at the hearing. As the party challenging the underlying trial court order, plaintiff has the burden " 'to provide an adequate record to assess error.' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) Her failure to do so is another basis to reject her challenge. (*Ibid.*)

To the extent plaintiff is arguing that a party seeking to compel arbitration must provide the original signed arbitration agreement as opposed to a copy, she cites no authority for this proposition, and indeed courts have held that to prove the existence of an arbitration agreement, "it is generally

14

sufficient . . . to present a copy of the [arbitration agreement] to the court." (*Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152, 1160.)

As we mentioned above, the parties did not address the issue of the red type at the hearing on the petition to compel arbitration, and the trial court did not rule expressly on the question. However, a trial court's order is presumed to be correct, and we will infer the trial court made all the necessary factual findings to support its order, including that the agreements conformed to the statutory requirements. (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1479, fn. 4 (*Roman*), citing *Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)

### 3. Plaintiff Fails to Show Error in the Trial Court's Implicit Finding that Plaintiff Read and Understood the Arbitration Agreements

Plaintiff argues that the arbitration agreements at issue are void because plaintiff did not read and understand them. " 'Ordinarily when a person with capacity of reading and understanding an instrument signs it, he may not, in the absence of fraud, imposition or excusable neglect, avoid its terms on the ground he failed to read it before signing it.' " (*Ramirez v. Superior Court* (1980) 103 Cal.App.3d 746, 754 (*Ramirez*).)

*Ramirez* held, however, that a party could invalidate a medical malpractice arbitration agreement by "show[ing] that he or she was coerced into signing or did not read the many waiver notices provided and did not realize that the agreement was an agreement to arbitrate." (*Id.* at p. 756.) The *Ramirez* court warned that such a showing would be difficult: A plaintiff would "have to explain how her eyes avoided the 10-point red type above the signature line; she will have to explain why she did not ask

15

questions about what she was signing; she will have to show that no one explained the document to her or asked her to read it before signing it; and she will have to explain why she did not rescind the agreement within 30 days after it was signed," as permitted under section 1295, subdivision (c). (*Ramirez, supra,* 103 Cal.App.3d at pp. 756-757.)

Plaintiff claims that she did not recall seeing an arbitration agreement in the stack of documents provided by defendant's staff, and "was told to sign [the documents] without ever once reading any of them." Plaintiff also asserts the staff never told her she could receive treatment even if she declined to sign the arbitration agreement.

Plaintiff cites no evidence in the record in support of her factual assertions, which is grounds to deem her argument waived. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) To the extent she intends to rely on the declaration she filed in the trial court in support of her opposition to the motion to compel arbitration, it is insufficient to satisfy the showing required by *Ramirez.* Although the declaration asserted that plaintiff signed the agreements without reading them, and that defendant's staff did not advise her to read them, plaintiff fails to explain, for example, "why she did not ask questions about what she was signing" or "why she did not rescind the agreement within 30 days after it was signed." (*Ramirez, supra,* 103 Cal.App.3d at pp. 756-757.)

As with plaintiff's claim regarding the lack of red type, the trial court did not rule expressly on the question of plaintiff's understanding of the arbitration agreements, nor did the parties raise the issue during the hearing. We presume the trial court made all the necessary factual findings to support its order,

16

including that plaintiff understood what she was signing. (See *Roman*, *supra*, 172 Cal.App.4th at p. 1479, fn. 4.) Plaintiff's unsupported assertions on appeal cannot overcome that presumption.

### 4. Plaintiff Fails to Show Error in the Trial Court's Finding that Defendant Did Not Waive His Right to Arbitration

Plaintiff argues that even if the arbitration agreements were valid, defendant waived his right to arbitrate by unreasonably delaying his petition until April 2012, seven months after being served with the first amended complaint, and engaging in litigation conduct inconsistent with an intent to arbitrate. We disagree.

California law "reflects a strong policy favoring arbitration agreements," and therefore "waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.) Factors relevant to a determination of waiver include: " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*Id.* at p. 1196,

quoting *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992 (*Sobremonte*).)

Our Supreme Court has held that participation in litigation, by itself, does not result in waiver, absent a showing of prejudice by the party opposing arbitration. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.) Prejudice is ordinarily found only where the petitioning party's conduct has "substantially undermined" the public policy of favoring arbitration as a speedier and less expensive means of resolving disputes or "substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*Id.* at p. 1204.) "For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence." (*Ibid.*)

As an initial matter, plaintiff once again fails " 'to completely and fairly summarize the evidence supporting the [trial] court's findings and judgment.' " (*Pacific Corporate*, *supra*, 232 Cal.App.4th at p. 313, fn. 16.) Specifically, plaintiff fails to mention in her brief the evidence that defendant sent her a letter demanding arbitration on February 8, 2012, approximately two months after defendant answered the complaint, and labeled subsequent discovery requests as pertaining to that arbitration as opposed to the proceedings in the trial court. Plaintiff also fails to mention the evidence put forth by defendant that she never responded to the demand, necessitating the later motion to compel. Thus, plaintiff's suggestion that defendant waited until

18

April 2012 to assert his right to arbitrate is not well taken, and her omission of relevant facts is grounds to deem her argument abandoned. (*Ibid.*)

We also agree with the trial court that plaintiff did not demonstrate prejudice from defendant's delay in asserting his right to arbitration. Plaintiff claims she was prejudiced by "the cost, time, and resources expended in litigating in the superior court for . . . seven months." She argues that defendant propounded multiple discovery requests that would not have been available in arbitration. She contends that these actions frustrated the purpose of arbitration by driving up costs and causing delay. Plaintiff further argues that had she "known earlier that she did not have a right to a jury trial, her tactical or strategic approach to litigation would have changed accordingly."

Plaintiff's assertions do not demonstrate prejudice. "Because merely participating in litigation, by itself, does not result in waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.) The fact that plaintiff expended money and resources in the trial court does not establish prejudice.

Plaintiff also fails to show that defendant took advantage of discovery procedures not available in arbitration, because the arbitration agreements at issue here expressly granted the parties the same ability to obtain discovery that they would have in the trial court. The arbitration agreements provided that discovery would be conducted pursuant to section 1283.05, under which parties to an arbitration have the same right to obtain discovery "as if the subject matter of the arbitration were pending before a superior court of this state in a civil action other than a

19

limited civil case." (§ 1283.05, subd. (a).) Plaintiff notes that, unlike in the trial court, section 1283.05, subdivision (e) requires the parties to seek leave from the arbitrator before taking depositions. The arbitration agreements here, however, stated that "depositions may be taken without prior approval of the neutral arbitrator," thus eliminating the only difference between judicial discovery and discovery under section 1283.05.

The discovery provisions in the arbitration agreements distinguish this case from those cited by plaintiff, *Sobremonte*, *supra*, 61 Cal.App.4th 980, and *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205 (*Davis*). In those cases, the courts found that "defendants used the discovery processes of the court to gain information about plaintiff's case which defendants could not have gained in arbitration. After obtaining discovery from plaintiff by court processes, defendants then belatedly sought to change the game to arbitration, where plaintiff would not have equivalent discovery rights." (*Davis*, *supra*, 59 Cal.App.4th at p. 215; see *Sobremonte*, *supra*, 61 Cal.App.4th at p. 996, quoting *Davis*.) Although plaintiff speculates that the arbitrators would have "limit[ed] the scope of discovery so as to streamline the process," the trial court reasonably could infer from the terms of the agreements that the parties' ability to conduct discovery would be the same whether in arbitration or the superior court.

Plaintiff's statement that "her tactical or strategic approach" would have been different had she known the case would be arbitrated is conclusory, with no explanation as to how her approach would differ. Her statement, without more, fails to demonstrate prejudice.

Plaintiff argues that defendant's conduct prior to filing his petition to compel arbitration was "inconsistent with an intent to

20

arbitrate [the] suit," noting that defendant demanded a jury trial in his answer, propounded "extensive" discovery, responded to plaintiff's discovery, failed to request arbitration in his case management statement, failed to raise arbitration in multiple trial court appearances, and moved to continue the trial date just before filing his petition to compel arbitration. By these actions—some occurring after defendant notified plaintiff of his intent to arbitrate—defendant did nothing more than engage in litigation. Without the requisite showing of prejudice, this is conduct the Supreme Court has expressly held does not give rise to waiver. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.) The trial court did not err in concluding that defendant had not waived his right to arbitrate.

## B. The Trial Court Properly Confirmed The Arbitration Award

Plaintiff challenges the trial court's order confirming the arbitration award, arguing that the neutral arbitrator failed to comply with the statutory disclosure requirements for his prior work with Carroll Kelly and his ex parte communications with defendant's counsel. Plaintiff contends the trial court properly vacated the award on this basis, and erred when it confirmed the award upon reconsideration. We disagree.

We review a trial court's order confirming an arbitration award de novo. (*Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 892, fn. 7.) However, "[t]o the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues." (*Ibid.*)

21

### 1. Plaintiff's Objection to the Arbitrator's Disclosures Was Untimely

"In seeking to ensure that a neutral arbitrator serves as an impartial decision maker, the statutory scheme requires the arbitrator to disclose to the parties any ground for disqualification." (*United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 74-75 (*United Health*).) "Section 1281.9, subdivision (a) provides a list of potentially disqualifying information to which the parties are entitled." (*United Health*, *supra*, 229 Cal.App.4th at p. 75, quoting § 1281.9, subd. (a) (2).) Among other things, an arbitrator must disclose specified information about prior and pending matters in which he or she served or is serving as an arbitrator or mediator and in which a party or a lawyer for a party in the current arbitration was or is involved. (*United Health*, *supra*, at p. 76; § 1281.9, subd. (a)(2)-(4); Cal. Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standards), std. 7(d)(4)-(5).)

An arbitrator's duty to disclose continues throughout the proceeding: "If an arbitrator subsequently becomes aware of a matter that must be disclosed . . . , the arbitrator must disclose that matter to the parties in writing within 10 calendar days after the arbitrator becomes aware of the matter." (Ethics Standards, std. 7(c)(2).) Section 1286.2, subdivision (a)(6) requires a trial court to vacate an award if an arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware." (§ 1286.2, subd. (a)(6); *United Health*, *supra*, 229 Cal.App.4th at p. 75.)

22

While failure to disclose properly a ground for disqualification generally mandates vacation of the award, this rule only applies if the party moving to vacate "had no reason to know of the existence of a nondisclosed matter." (*United Health*, *supra*, 229 Cal.App.4th at p. 85.) If a party is "aware that a disclosure is incomplete or otherwise fails to meet the statutory disclosure requirements," the party "cannot passively reserve the issue for consideration after the arbitration has concluded." (*Ibid.*)

This principle is illustrated by *Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831 (*Dornbirer*). In *Dornbirer*, an arbitrator disclosed to the parties in advance of the arbitration that he had served as an arbitrator in previous matters involving the defendant. (*Id.* at pp. 836-837.) After the arbitrator ruled in the defendant's favor, the plaintiff moved to vacate the award under section 1286.2. (*Dornbirer*, *supra*, 166 Cal.App.4th at p. 835.) The plaintiff contended the disclosure was unclear as to how many matters involving the defendant the arbitrator had served in, and did not include the details required under section 1281.9 such as the dates of those arbitrations, what awards were granted, and what other attorneys were involved. (*Dornbirer*, *supra*, at p. 836.)

The Court of Appeal rejected the plaintiff's argument. The court reasoned that the disclosure, however inadequate, "put [the plaintiff] on notice that [the arbitrator] had served as an arbitrator in a number of cases in which [the defendant] was a party." (*Dornbirer*, *supra*, 166 Cal.App.4th at p. 842.) Despite this knowledge, the plaintiff "agreed to go forward with the arbitration. Allowing [the plaintiff] to successfully petition to vacate the arbitration award in this case, at this stage of the

23

proceedings . . . would undermine the statutory scheme. Under [the plaintiff's] interpretation, a party could simply hold off on raising the issue of the completeness of the arbitrator's disclosure, wait to see if he or she is pleased with the arbitration award, and, if unhappy with the award, challenge the award on the basis" of the incomplete disclosure. (*Id.* at pp. 842-843.)

In the instant case, we conclude that although the neutral arbitrator did not provide his disclosures within the time required by statute, plaintiff forfeited her challenge by not objecting to the disclosures until after the award issued. Plaintiff's counsel admitted that he received the neutral arbitrator's disclosures in January 2015. Plaintiff's counsel also knew several months earlier that Carroll Kelly had substituted in as defendant's counsel. Thus, plaintiff's counsel was on notice that the neutral arbitrator's disclosures were potentially untimely, having been served more than 10 days after the substitution occurred. Plaintiff took no action, however, until the arbitration panel issued an award in defendant's favor, some 10 months later, at which point plaintiff attempted to vacate the award based on the neutral arbitrator's purported failure to disclose. Under *United Health* and *Dornbirer*, plaintiff cannot do so. The trial court thus erred when it vacated the award based on the neutral arbitrator's untimely disclosures, and correctly held upon reconsideration that plaintiff's objection was itself untimely.[5]

------

[5] In the section of her opening brief summarizing the procedural history of the case, plaintiff claims that other disclosures the neutral arbitrator made earlier in the proceedings were also statutorily deficient in that they lacked certain

24

In her opening brief, plaintiff offers no argument to the contrary other than to quote extensively from the trial court's original order vacating the award.[6] As we have explained, that earlier order was in error. Moreover, plaintiff's argument is misleading because she primarily quotes from the first section of the vacation order, in which the trial court, based on representations by plaintiff's counsel and her party arbitrator, incorrectly concluded that the neutral arbitrator had failed to provide any disclosures at all. (See fn. 4, *ante*.) Plaintiff also states in her summary of the case's procedural history, in boldface and italicized font, that "***After Carroll Kelly substituted in, [the neutral arbitrator] did not provide any disclosures regarding his work and other history with Carroll Kelly.***" This is inaccurate—upon review of additional evidence the trial court concluded that the neutral arbitrator had provided the disclosures, as plaintiff's counsel ultimately admitted. Plaintiff's briefing thus does not " 'completely and fairly summarize the evidence supporting the [trial] court's

---

required advisory language. Plaintiff makes no arguments based upon the purported deficiencies, and notably does not assert that the deficiencies alone would support vacating the award. We thus decline to address the purported deficiencies further.

[6] Plaintiff purports to incorporate by reference her arguments from her memorandum of points and authorities filed in the trial court in support of her motion to vacate the award. "It is inappropriate for an appellate brief to incorporate by reference arguments contained in a document filed in the trial court." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 854.) We disregard plaintiff's arguments to the extent she did not include them in her opening brief. (*Ibid.*)

25

findings and judgment,' " which is grounds to reject her challenge.  (*Pacific Corporate*, *supra*, 232 Cal.App.4th at p. 313, fn. 16.)

In her reply brief, plaintiff argues that while she may have forfeited the right to disqualify the neutral arbitrator by not timely objecting to his late disclosures, she did not thereby forfeit the right to vacate the award, which she contends is a separate right.  She notes that, under section 1281.91, subdivision (c), a party must seek to disqualify an arbitrator within 15 days of the arbitrator's failure to provide the required section 1281.9 disclosures, or else the party waives the right to disqualify (absent certain exceptions not applicable here).  But, plaintiff further notes, that same subdivision states that it shall not " 'limit the right of a party to vacate an award pursuant to Section 1286.2.' "  Plaintiff contends this provision establishes that "forfeiting a right to disqualify the [arbitrator] does not prevent vacatur of the award."  She further asserts that *Dornbirer* and *United Health* "only discuss disqualification, not vacatur."

Plaintiff mischaracterizes *Dornbirer* and *United Health*, both of which involved challenges to orders either granting or denying motions to vacate arbitration awards.  (See *Dornbirer*, *supra*, 166 Cal.App.4th at p. 834; *United Health*, *supra*, 229 Cal.App.4th at p. 68.)  *Dornbirer* expressly discussed section 1281.91, subdivision (c), and concluded that "to permit a party to vacate an arbitration award at the conclusion of the arbitration" based on a deficiency in the arbitrator's disclosures of which the party was aware and yet took no action to address "would undermine the purpose of the time limitations imposed"

in section 1281.91, subdivision (c). (*Dornbirer*, *supra*, at p. 846; see *United Health*, *supra*, at p. 78 [analyzing *Dornbirer*].)

We agree. In stating that the provisions of section 1281.91 do not limit a party's right to vacate an award under section 1286.2, it cannot have been the intent of the Legislature thereby to permit a party to hold a known ground for disqualification in reserve, ready to play as a trump card once the award issued. As *Dornbirer* concluded, such an interpretation would render the time limits in section 1281.91 meaningless, to say nothing of the unfairness to the other parties to the arbitration.

**2.    The Arbitrator's Ex Parte Communications With Defendant's Counsel Were Insufficient to Justify Vacating the Award**

Ethics Standards, standard 14 (standard 14) governs ex parte communications in contractual arbitration. Under standard 14(a), "[a]n arbitrator must not initiate, permit, or consider any ex parte communications or consider other communications made to the arbitrator outside the presence of all of the parties concerning a pending or impending arbitration, except as permitted by this standard, by agreement of the parties, or by applicable law." Standard 14(b) provides that "An arbitrator may communicate with a party in the absence of other parties about administrative matters, such as setting the time and place of hearings or making other arrangements for the conduct of the proceedings, as long as the arbitrator reasonably believes that the communication will not result in a procedural or tactical advantage for any party. When such a discussion occurs, the arbitrator must promptly inform the other parties of the communication and must give the other parties an opportunity to

27

respond before making any final determination concerning the matter discussed."

In its order vacating the award, the trial court concluded that the two ex parte communications identified by plaintiff pertained to "administrative matters" under standard 14(b), but that the neutral arbitrator had failed to disclose them. The trial court found this failure justified vacation under section 1286.2, subdivision (a)(6), for nondisclosure of a ground for disqualification, or, alternatively, subdivision (a)(3), which requires a court to vacate an award if a party's rights "were substantially prejudiced by misconduct of a neutral arbitrator."

Upon reconsideration, however, the trial court found that the neutral arbitrator had disclosed the communication regarding defendant's waiver of section 998 costs in the written final award, thus complying with standard 14. The trial court did not address the second ex parte communication, in which the neutral arbitrator and defendant's counsel discussed their mutual availability for the previously scheduled arbitration; however, we may infer from its ruling that it found that nondisclosure of that communication did not justify vacating the award.

The trial court's ruling upon reconsideration was correct. As to the communication regarding defendant's waiver of costs, it is questionable whether disclosing the communication in the final award satisfied standard 14(b), when plaintiff was not given "an opportunity to respond" before the award was finalized. We need not resolve that issue, however, because even if the neutral arbitrator had not disclosed the communication at all, vacation would not be warranted under section 1286.2, subdivisions (a)(3) and (6), the provisions cited in the trial court's prior order and by plaintiff on appeal.

28

Section 1286.2, subdivision (a)(3) requires vacation when an arbitrator's misconduct "substantially prejudiced" a party. We do not condone the neutral arbitrator's failure to include plaintiff's counsel in the communications regarding waiver of costs prior to issuing the final award. Plaintiff, however, does not claim she suffered any prejudice thereby, and given that the communication took place after the arbitrators issued the interim award, which did not differ materially from the final award, it could not have affected the award itself.

We further hold that failure to disclose the communication regarding waiver of costs was not a "ground for disqualification" under section 1286.2, subdivision (a)(6). Section 1281.91, subdivision (a) states that failure to comply with the disclosure requirements of section 1281.9 is grounds for disqualification. Section 1281.9, subdivision (a)(2), in turn, incorporates the disclosures required by the Ethics Standards, which would include standard 14. But courts have held that "not every item of information that is required to be disclosed under section 1281.9 constitutes a 'ground for disqualification' as the term is used in section 1286.2." (*Dornbirer*, *supra*, 166 Cal.App.4th at p. 842; accord, *United Health*, *supra*, 229 Cal.App.4th at p. 77.)

In *Dornbirer*, for example, the Court of Appeal held that, although section 1281.9 requires arbitrators to disclose detailed information regarding past arbitrations involving the parties or their attorneys, failure to disclose those details does not mandate vacation of the award. (*Dornbirer*, *supra*, 166 Cal.App.4th at p. 842.) Rather, section 1286.2, subdivision (a)(6) mandates vacation only when an arbitrator "fail[s] to disclose the existence and nature of *any* relationship between the arbitrator and the parties or the parties' attorneys, not the specifics of each

29

relationship." (*Dornbirer, supra*, at p. 842, italics added.) The *Dornbirer* court reasoned that to conclude otherwise would lead to absurd results, with arbitration awards vacated based on minor omissions of details. (*Ibid.*) We similarly conclude that section 1286.2 cannot be read to require vacation of an award when an arbitrator fails to disclose an ex parte communication waiving section 998 costs that did not prejudice the other party.

The record also supports the trial court's implicit finding that the award should be confirmed despite the neutral arbitrator's failure to disclose the ex parte communication with defendant's counsel regarding their mutual availability for the previously scheduled arbitration. In the e-mail to the neutral arbitrator inquiring about that communication, plaintiff's counsel stated that he first learned of it from defendant's counsel "the weekend before the arbitration." Thus, plaintiff's counsel knew of the communication before the arbitration began, yet waited until the arbitration panel issued the award before inquiring further and objecting to the communication. Plaintiff therefore forfeited any challenge to the award on that basis. (See *Dornbirer, supra*, 166 Cal.App.4th at pp. 842-843.)

### 3. Plaintiff Has Not Presented Properly on Appeal Her Additional Arguments in Support of Vacating the Award, and They Lack Merit

In the introduction to her opening brief on appeal, plaintiff copies nearly verbatim from her motion to vacate the award in the trial court, and in so doing states several purported examples of arbitrator misconduct raised in the trial court, but upon which the trial court did not base its original vacation order. Plaintiff claims "[t]he award was procured by undue means, corruption, fraud or other misconduct" because, according to plaintiff, the

30

neutral arbitrator resisted including the plaintiff party arbitrator's dissent along with the award, breached confidentiality by including Judicate West's president in discussions regarding the dissent, complained about the plaintiff party arbitrator's written assessment of the case, and "threatened [plaintiff's] counsel" when plaintiff's counsel inquired by email about the ex parte contacts. Plaintiff summarizes the purported facts underlying these claims in the procedural history section of her appellate brief. Plaintiff again refers to these claims in her reply brief, arguing that the trial court's order confirming the award was not based on substantial evidence because it ignored plaintiff's other evidence of "bias and non-disclosure" apart from the neutral arbitrator's late-filed disclosures, including the breach of confidentiality by involving Judicate West's president in discussions and the e-mail plaintiff claims "threatened [her] counsel."

Plaintiff has not presented these arguments properly on appeal. The additional points raised in her introduction and summary of the procedural history are not included in the argument section of her opening brief, nor does she support those points with either argument or citation to authority elsewhere in the brief. (See Cal. Rules of Court, rule 8.204(a)(1)(B).) Her attempt to rectify this in her reply brief is unavailing. (See *Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487, fn. 4 ["An appellant's failure to raise an argument in the opening brief waives the issue on appeal."].)

Even if plaintiff had presented these arguments properly, they would not warrant reversal of the judgment. Whether the purported acts occurred, and if so, whether they were sufficiently indicative of misconduct, fraud, or corruption to negate the award

31

were questions of fact within the purview of the trial court. The trial court acknowledged these additional purported acts in its order vacating the award but did not assert them as a basis for vacation. Instead, it based its ruling on the neutral arbitrator's untimely disclosures and ex parte communications. The trial court did not refer to the additional acts again when it reconsidered its earlier order and confirmed the award. We infer the trial court continued to conclude that the additional acts were insufficient to justify vacating the award. The trial court was entitled to make this determination as the finder of fact, and we will not disturb its finding on appeal. In so holding, once again, we do not condone the neutral arbitrator's conduct; in particular, the neutral arbitrator's e-mail to plaintiff's counsel warning him "to be careful who you accuse of engaging in unethical behavior" was unprofessional strong-arming.

## C. The Trial Court Properly Reconsidered The Order Vacating The Award

In addition to challenging the merits of the trial court's order confirming the arbitration award, plaintiff argues that the order was procedurally erroneous because defendant's motion for reconsideration did not comply with the strict requirements of section 1008. She also contends it was error for the trial court to allow the neutral arbitrator to present argument and for the trial court to rely on that argument in granting reconsideration. We conclude that the trial court properly granted reconsideration on its own motion, which was not subject to the requirements of section 1008. Although we agree it was error for the trial court to allow the neutral arbitrator to argue in favor of reconsideration, that error was not prejudicial.

32

### 1. The Trial Court Properly Granted Reconsideration on Its Own Motion

"Section 1008, subdivision (a) requires that a motion for reconsideration be based on new or different facts, circumstances, or law. A party seeking reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time." (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212 (*New York Times*).) A trial court may not grant a party's motion for reconsideration that does not comply with section 1008. (*New York Times*, *supra*, 135 Cal.App.4th at p. 211, citing *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1096, 1108 (*Le Francois*).) However, section 1008 imposes no limits on "a *court's* ability to reconsider its previous interim orders on its own motion, so long as it gives the parties notice that it may do so and a reasonable opportunity to litigate the question." (*Le Francois*, *supra*, at pp. 1096-1097.)

The parties here argue as to whether defendant's motion was based on "new or different facts, circumstances, or law." These arguments are beside the point, because it is evident the trial court did not reconsider its order based on any of the purportedly new law or facts in defendant's motion, but on its own realization that its earlier order was in error, as permitted by *Le Francois*. (See *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1308 (*Barthold*) ["*Le Francois* simply requires that the trial court reconsider a prior ruling based on its own realization that the ruling was erroneous, and not based upon a determination that the motion to reconsider should itself be granted on its merits"].)

In granting reconsideration, the trial court did not refer to the purportedly new evidence and law raised by defendant's

33

motion, but only the arguments raised by the neutral arbitrator at the hearing on the motion.  The trial court stated, "I'm persuaded by what [the neutral arbitrator] has argued."  When explaining its reasoning for reconsideration, it referred to the points, "as articulated by [the neutral arbitrator]," that plaintiff failed to object to the neutral arbitrator's untimely disclosure, and that one of the ex parte communications was disclosed in the written award.  These arguments were based on facts available to the trial court at the time it initially ordered the award vacated, and indeed could have been raised by defendant when he opposed plaintiff's motion to vacate. (See *Barthold, supra*, 158 Cal.App.4th at p. 1314 [reconsideration on trial court's own motion must be based on evidence submitted with original motion being reconsidered].)

Thus, the trial court did not grant reconsideration based on the purportedly new law and facts defendant put forth in its motion for reconsideration, but on the trial court's own authority after it reexamined the existing evidence in light of the neutral arbitrator's arguments.  Plaintiff offers no argument to the contrary, other than to make the conclusory statement that the trial court did not grant the motion under its own authority.  On this record, we must disagree.

We acknowledge that the trial court stated at the hearing that it was "grant[ing] the request for reconsideration," and the judgment signed by the trial court stated "the Court granted the motion for reconsideration of defendant Aram Bonni, M.D."  This does not affect our conclusion that the trial court reconsidered its prior ruling under its own authority.  In *Barthold*, the trial court issued an order stating "[t]he motion for reconsideration is granted," but the Court of Appeal held that the trial court

34

had granted the motion on its own authority. (*Barthold*, *supra*, 158 Cal.App.4th at pp. 1308-1309.) The appellate court noted that the trial court had not based its ruling on any purportedly "new" evidence submitted in the motion for reconsideration, but on evidence the trial court had before it when it made its original order. (*Id.* at p. 1309.) The trial court's order also referenced the court's inherent authority to reconsider its prior rulings. (*Id.* at pp. 1306, 1309.) Under those circumstances, the *Barthold* court concluded that in stating that the motion for reconsideration was granted, "the [trial] court simply meant that it was providing the *relief* sought by the motion, and did not mean to say that it was granting the motion itself." (*Id.* at p. 1309.)

We reach the same conclusion here. Although the trial court did not invoke its inherent authority expressly, in context, it was clear the trial court did so. The trial court did not grant defendant's motion on the merits, but only the relief sought by that motion. (*Barthold*, *supra*, 158 Cal.App.4th at p. 1309.)

## 2. Any Error in Permitting the Arbitrator to Argue Before the Trial Court Was Harmless

Plaintiff argues that it was improper for the neutral arbitrator to argue before the trial court, citing, among other things, the ethical rules for arbitrators and the Evidence Code. She also objects that the trial court deprived her of an opportunity to "obtain witnesses who would provide testimony contrary to [the neutral arbitrator]'s assertions and argument" by confirming the award without further hearing or evidence.

Evidence Code section 703.5 broadly prohibits arbitrators from "testify[ing], in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in

35

conjunction with" an arbitration over which they presided. There are limited exceptions to this prohibition, one of which permits an arbitrator to provide testimony that "addresses [a] charge of bias, partiality or improper conduct." (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 927.)

Here, the proceedings in the trial court concerned the neutral arbitrator's purported improper conduct, thus potentially implicating the exception noted above. It does not appear to us, however, that the neutral arbitrator merely testified. The record demonstrates that he propounded legal argument as if he were an advocate for defendant, pointing out, for example, plaintiff's failure to timely object to his late disclosures. This was improper, and the trial court erred in allowing the neutral arbitrator to do so.

We nonetheless hold that the error was harmless. "[T]he California Constitution requires that in any case in which a trial judge reconsiders an erroneous order, and enters a new order that is substantively correct, the resulting ruling must be affirmed regardless of any procedural error committed along the way." (*Barthold*, *supra*, 158 Cal.App.4th at p. 1313.) Here the trial court's order confirming the award was substantively correct. The undisputed evidence showed that the neutral arbitrator provided the disclosures required by law, and plaintiff did not timely object to the lateness of those disclosures. As for the ex parte communications, to the extent the neutral arbitrator did not disclose them properly, neither constituted a ground for disqualification nor substantially prejudiced plaintiff. Thus, the trial court's original order vacating the award was in error, and the trial court correctly confirmed the award upon reconsideration.

36

Plaintiff claims she was "deprived of any opportunity to challenge anything that [the neutral arbitrator] argued," suggesting that the trial court should have granted further briefing or hearing. Plaintiff does not, however, explain what she might have offered that would have undercut the trial court's ruling. The neutral arbitrator's arguments were based on undisputed evidence of which plaintiff was well aware, and plaintiff suggests no other evidence she might have introduced if given further opportunity. To the extent the trial court deprived plaintiff of an opportunity to challenge the neutral arbitrator's legal arguments, this appeal has provided plaintiff with that opportunity, and her arguments have not persuaded us. Thus, a remand for further hearing would serve no purpose.

## DISPOSITION

The judgment is affirmed. Defendant is awarded his costs on appeal.

CERTIFIED FOR PUBLICATION.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

37