Filed 3/7/23  Scottsdale Insurance Co. v. Parmerlee CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION FOUR

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LISA PARMERLEE, THOMAS C. LALLY, AND NANCY G. LALLY, AS TRUSTEES OF THE THOMAS C. LALLY AND NANCY G. LALLY REVOCABLE TRUST et al.,<br><br>Defendants and Appellants. | B322733<br><br>(Santa Clara County Super. Ct. No. 16CV292923) |

APPEAL from a judgment of the Superior Court of Santa Clara County, Mary Arand, Judge. Affirmed.

Boliver Law and Gail E. Boliver; Law Offices of Keith J. Hollis and Keith J. Hollis for Defendants and Appellants.

Gordon Rees Scully Mansukhani, Matthew S. Foy and Jennifer N. Wahlgreen; Selman, Leichenger, Edson, Hsu, Newsman & Moore and Linda Wendell Hsu for Plaintiff and Respondent.

## INTRODUCTION

Lisa Parmerlee, Thomas C. Lally, and Nancy G. Lally (as trustees of the Thomas C. Lally and Nancy G. Lally Revocable Trust), Thomas Lally, and Thomas Lally's IRA (collectively, appellants) appeal from a judgment entered after the trial court denied their motion to vacate an arbitration award and granted the petition of Scottsdale Insurance Company (Scottsdale) to confirm the award. Appellants contend: (1) one of the arbitrators on the panel failed to disclose, within the time required for disclosure, a ground for disqualification of which the arbitrator was then aware; and (2) the arbitration proceedings were fundamentally unfair. For the reasons discussed below, we reject these contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Scottsdale Policy

Scottsdale issued a "Broker/Dealer Financial Services Professional Liability Insurance Policy" to DeWaay Financial Network, LLC and its "representatives" (collectively, DeWaay). The policy insured DeWaay against claims made and reported to Scottsdale during the policy period—December 1, 2010 through January 23, 2012. The policy contains an arbitration provision, providing in relevant part: "In the event of any such dispute, the matter shall be resolved by binding arbitration before three privately selected arbitrators acting pursuant to the arbitration provisions of the California Arbitration Act, Section 1280 through 1294.2 of the Code of Civil Procedure. . . . There shall be three arbitrators, one named in writing by each of the parties within ten days after demand for arbitration is given and a third chosen by the two appointed arbitrators." The policy also states: "At the

hearing, either party may present any relevant evidence and the formal rules of evidence applicable to judicial proceedings shall not govern . . . . The submission of a dispute to the arbitrator(s) may be rendered by any Superior Court having jurisdiction, or such Court may vacate, modify, or correct the award in accordance with the prevailing sections of the California Arbitration Act."

### B. History of the Relevant Claims

On January 9, 2012, Gordon Mosher filed a class action petition against DeWaay in Iowa District Court for negligence and violations of the Iowa Uniform Securities Act (Mosher Class Action). Appellants were not named as plaintiffs or identified in the Mosher Class Action. The Mosher Class Action was reported to Scottsdale during the policy period. Scottsdale retained Sam Edgerton to defend DeWaay in the Mosher Class Action. The parties in the Mosher Class Action reached a settlement, and the trial court approved the proposed settlement. In 2015, however, the Iowa Court of Appeals reversed the decision of the trial court and remanded the matter for further proceedings. Over the next several years, Scottsdale and DeWaay resolved the claims of the individual putative class members.

In February and March 2016, appellants filed a "FINRA [Financial Industry Regulatory Authority] Statement of Claim[s]" against DeWaay for the first time. Scottsdale denied a duty to defend or indemnify DeWaay against the claims made by appellants on the ground they were made and reported more than four years after the policy period expired.

### C. Arbitration Proceedings

On March 18, 2016, Scottsdale filed a petition to compel DeWaay to binding arbitration based on the arbitration provisions in the policy. It filed a first amended petition on November 10, 2016. The trial court granted the petition on February 9, 2017.

Appellants subsequently entered into a settlement agreement with DeWaay. The settlement agreement included an assignment of "all of [DeWaay]'s rights to bring causes of action, including without limitation breach of contract and bad faith" against Scottsdale. The arbitration, therefore, proceeded between Scottsdale and appellants.

Scottsdale selected William Kronenberg as its party arbitrator, and appellants selected Val Hornstein as their party arbitrator. Kronenberg and Hornstein jointly selected Judge Bonnie Sabraw (Ret.) as the neutral third arbitrator. Before the arbitration hearing began, appellants voluntarily dismissed Hornstein as their party arbitrator; thus, the arbitration proceeded before a panel of two arbitrators.

On December 7, 2017, Judge Sabraw provided the parties with a disclosure statement. The statement identified arbitrations she had participated in within the previous five years, and mediations she had participated in within the previous two years, that involved the parties, their counsel, or their counsel's law firms. It also stated: "Please be advised that Judge Sabraw **will** continue to entertain offers of employment (as a neutral) from a party, lawyer, or law firm involved in the above referenced matter while it is pending. . . . [T]he parties in this matter will be notified if Judge Sabraw receives a new offer of

4

employment while this arbitration is pending." (Emphasis in original.)

In January and April of 2018, Judge Sabraw provided the parties with supplemental disclosures. Appellants did not object to the supplemental disclosures.

Throughout the arbitration proceedings, each time Judge Sabraw accepted an offer of employment from the law firms of Scottsdale's counsel, Judge Sabraw sent a "Notice of Offer and Acceptance of Employment" to the parties. Specifically, between July 11, 2018 and September 20, 2019, the parties received a total of 16 emails from Judge Sabraw's office notifying them that she accepted an offer from the law firms of Scottsdale's counsel to serve as a mediator, neutral arbitrator or referee.

A two-day hearing was held on May 20 and 22, 2019. On July 9, 2019, the panel issued an Interim Arbitration Award, finding in favor of Scottsdale on all arbitrated claims. It concluded appellants failed to meet their burden of demonstrating their claims were made and reported within the policy period, which was a requirement for coverage. It explained: "[T]he differences between the [Mosher] Class Action Petition and the Lally and Parmerlee FINRA actions, coupled with the notice provisions in the Scottsdale policy, establish that the making and reporting of the [Mosher] Class Action during the [p]olicy period was not a making and reporting of the Parmerlee and Lally claims to Scottsdale during the [p]olicy period."

After the panel issued the Interim Arbitration Award, on September 16, 2019, appellants requested Judge Sabraw's recusal from the arbitration proceedings "based upon financial bias or undue means." Appellants argued the "offers of employment [from Scottsdale's counsel's law firms were] an overt

5

effort to sway the decision." Judge Sabraw denied the request, declaring she has "been neither prejudiced nor biased in favor of or against any party or counsel" throughout the arbitration. She further declared: "A total of sixteen (16) [disclosure] notices were issued from July 11, 2018 through September 20, 2019. . . . The accepted matters were twelve (12) mediations, three (3) arbitrations and a reference. For the same time period, I accepted a total of approximately 200 cases." She concluded: "At no time prior to service of the Interim Award and filing of Scottsdale's motion for costs did any attorney question my fairness to handle this case or raise any issue regarding undue means as a result of my acceptance of additional employment. [¶] . . . I have not had any disqualifying contact with any counsel or party to this matter and I properly issued disclosures as required by California law."

The panel denied Scottsdale's motion to recover costs, and issued a Final Arbitration Award on October 1, 2019.

### D. Trial Court Proceedings

Scottsdale petitioned the superior court to confirm the award (Code Civ. Proc., § 1286)[1]; appellants petitioned for the award to be vacated (§ 1286.2).[2] Appellants principally argued the "'neutral' arbitrator failed to disclose substantial financial

---

1    All further undesignated statutory references are to the Code of Civil Procedure.

2    Appellants also filed a motion to vacate arbitration in the United States District Court for the Northern District of California (Case No. 19-mc-80298-JSC). That action is stayed pending the resolution of the state court proceedings. (*Scottsdale Ins. Co. v. Parmerlee* (N.D. Cal., March 23, 2020, No. 19-mc-80298-JSC) 2020 U.S. Dist. LEXIS 49941, at \*18.)

6

information demonstrating a significant financial entanglement with [Scottsdale] . . . ." The trial court disagreed, holding "[Judge] Sabraw made disclosures as required by applicable law of new retentions by counsel for the parties, and [appellants] failed to object within the applicable time period and waived their right to object." It further found "no material omission or misrepresentation in the disclosures by [Judge] Sabraw. Moreover, [appellants] did not seek to disqualify the arbitrator until after hearings were held and after the Interim Arbitration Award was issued."

The trial court confirmed the award, and entered judgment in favor of Scottsdale. Appellants appeal from the judgment.[3]

## DISCUSSION

### A. Governing Law and Standard of Review

We first address the threshold issue of whether federal or state law applies. In their opening brief, appellants contend the arbitration award should be vacated, citing provisions of the California Arbitration Act (CAA). Later in their opening brief, however, appellants also argue the arbitration award should be vacated under the Federal Arbitration Act (FAA), without any explanation regarding whether the FAA is applicable. As discussed above, the express language of the policy's arbitration provision provides the CAA applies: "The submission of a dispute to the arbitrator(s) may be rendered by any Superior Court having jurisdiction, or such Court may vacate, modify, or correct the award in accordance with the prevailing sections of the

---

3      On August 9, 2022, the Supreme Court ordered the case transferred from the Sixth Appellate District to the Second Appellate District.

7

California Arbitration Act." Appellants do not dispute they are bound by the language of the policy as the assignees of the insureds (i.e., DeWaay). We therefore consider this matter under the CAA, including the provisions governing judicial review. (See, e.g., *Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1104-1105, fn. 4 [acknowledging security brokerage agreements involve interstate commerce, but applying the provisions of the CAA because "'a state court applies its own procedural law—here, the procedural provisions of the CAA— absent a choice-of-law provision expressly mandating the application of the procedural law of another jurisdiction'"]; see also *SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1195 [noting the FAA "does not preempt California's statutory grounds for vacating an arbitration award"].)

"We review de novo the trial court's order confirming the arbitration award." (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1435.) "The scope of judicial review of arbitration awards is extremely narrow because of the strong public policy in favor of arbitration and according finality to arbitration awards." (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33 (*Ahdout*).) Thus, "an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6.) "However, Code of Civil Procedure section 1286.2 provides limited exceptions to this general rule." (*Ahdout, supra*, 213 Cal.App.4th at p. 33.)

Appellants primarily rely on section 1286.2, subdivision (a)(6)(A) as the statutory basis for challenging the award. That

section states a court shall vacate an award when the arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware." (§ 1286.2, subd. (a)(6)(A).) Appellants also rely on section 1286.2, subdivision (a)(3), which provides, in relevant part, that a court shall vacate an arbitration award if it determines "[t]he rights of the party were substantially prejudiced by misconduct of a neutral arbitrator."

## B. The Trial Court Properly Denied Appellants' Motion to Vacate the Arbitration Award

### 1. The Neutral Arbitrator Timely Disclosed All Information Required Under the CAA

The CAA requires a neutral arbitrator to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . ." (§ 1281.9, subd. (a).) Regarding other employment opportunities, "the proposed neutral arbitrator shall disclose whether or not he or she has a current arrangement concerning prospective employment or other compensated service as a dispute resolution neutral or is participating in, or, within the last two years, has participated in, discussions regarding such prospective employment or service with a party to the proceeding." (§ 1281.9, subd. (a)(1).) An arbitrator's duty to disclose continues throughout the proceeding: "If an arbitrator subsequently becomes aware of a matter that must be disclosed . . . , the arbitrator must disclose that matter to the parties in writing within 10 calendar days after the arbitrator becomes aware of the matter." (Cal. Rules of Court, Ethics

9

Standards for Neutral Arbitrators in Contractual Arbitration, std. 7(c)(2).)

If a party seeks to disqualify an arbitrator based on a disclosure made under section 1281.9, subdivision (a), that party must do so within 15 days after service of the disclosure. (§ 1281.91, subd. (b)(1).) A party who fails to disqualify a neutral arbitrator within the 15-day time limit waives the right to disqualify the arbitrator. (§ 1281.91, subd. (c).) Section 1281.91, subdivision (c) also prohibits service of a notice of disqualification "after a hearing of any contested issue of fact relating to the merits of the claims or after any ruling by the arbitrator regarding any contested matter." (*Ibid.*) "If a party is 'aware that a disclosure is incomplete or otherwise fails to meet the statutory disclosure requirements,' the party 'cannot passively reserve the issue for consideration after the arbitration has concluded.'" (*Cox v. Bonni* (2018) 30 Cal.App.5th 287, 306 (*Cox*).) "'[T]o permit a party to vacate an arbitration award at the conclusion of the arbitration' based on a deficiency in the arbitrator's disclosures of which the party was aware and yet took no action to address 'would undermine the purpose of the time limitations imposed' in section 1281.91, subdivision (c)." (*Cox, supra*, 30 Cal.App.5th at p. 308, quoting *Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 846 (*Dornbirer*).)

Applying these principles, we conclude appellants forfeited their right to disqualify Judge Sabraw for two reasons. First, appellants requested recusal of Judge Sabraw on September 16, 2019—two months after the most recent disclosure notice sent to

10

the parties on July 15, 2019.[4] Appellants, therefore, forfeited their right to disqualify Judge Sabraw by failing to seek disqualification within the 15-day time limit. (See § 1281.91, subd. (c).) Moreover, if appellants took issue with the completeness of the disclosures (i.e., the disclosures did not disclose the monetary value of each employment offer), they failed to timely seek additional information. (See, e.g., *United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 85 [If a party is "aware that a disclosure is incomplete or otherwise fails to meet the statutory disclosure requirements," the party "cannot passively reserve the issue for consideration after the arbitration has concluded"].) Second, appellants waited until after the panel issued the Interim Arbitration Award to seek Judge Sabraw's disqualification. For this additional reason, appellants forfeited their challenge by not objecting to Judge Sabraw's disclosures until after the panel issued a ruling on a "contested matter." (§ 1281.91, subd. (c).)

In any event, even if appellants timely objected to Judge Sabraw's disclosures, for the reasons discussed below, we conclude the objections are meritless.

It is undisputed that Judge Sabraw timely disclosed each time she accepted an offer of employment from the law firms of Scottsdale's counsel. Appellants nevertheless contend the disclosures were insufficient because they "do not, individually or in the aggregate, explain and provide notice of the extent of the neutral's financial entanglement with Scottsdale or its

---

4    Judge Sabraw sent three additional disclosure notices after appellants sought to disqualify Judge Sabraw based on her previous disclosures.

11

partisans." They fail to cite any case law or statute, however, to support their assertion that a disclosure is insufficient if it does not include the financial terms of the employment offer.[5] And, even if financial information was required, failure to include the information is not a basis for vacating an arbitration award. (See *Dornbirer, supra*, 166 Cal.App.4th at p. 842 ["[N]ot every item of information that is required to be disclosed under section 1281.9 constitutes a 'ground for disqualification' as the term is used in section 1286.2. Rather, the most reasonable interpretation of the statutory scheme is that the words 'failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware' in section 1286.2 refer to a failure to disclose the existence and nature of any relationship between the arbitrator and the parties or the parties' attorneys, not the specifics of each such relationship"].) The disclosure notices provided sufficient information for the parties to inquire about additional information they felt was needed within the 15-day time limit in section 1281.91, subdivision (c). (See *Dornbirer, supra*, 166 Cal.App.4th at p. 842

---

5      Appellants' reliance on *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40 (*Benjamin*) is misplaced. *Benjamin* involved a fee dispute between a law firm and its client. At the time of the arbitration, the neutral arbitrator was engaged generally in the defense of attorneys and law firms in cases involving professional responsibility and was actively representing a law firm in a case before the California Supreme Court involving a dispute over legal fees. (*Id*. at p. 72.) Based on the arbitrator's complete lack of disclosure, the court reversed the trial court's order denying vacation of the arbitration award. (*Id*. at pp. 73, 80.) Here, by contrast, appellants concede timely disclosure notices were received.

["When a party has been informed of the existence of a prior relationship between the arbitrator and another party or an attorney, that party is aware of facts that would put the party on notice of the potential for bias. If the arbitrator does not include additional information regarding such a relationship in the disclosure, a party has sufficient information to inquire of the arbitrator concerning that information"].) As discussed above, appellants failed to do so.

Accordingly, we conclude appellants forfeited their objections to Judge Sabraw's disclosures by failing to timely object or seek additional information. And, in any event, Judge Sabraw made timely and complete disclosures as required by section 1281.9. The trial court, therefore, properly denied appellants' motion to vacate based on Judge Sabraw's alleged failure to "disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware." (§ 1286.2, subd. (a)(6)(A).)

## 2. Appellants Fail to Show the Arbitration Proceedings Were Fundamentally Unfair

Alternatively, appellants contend vacation of the arbitration award is required under section 1286.2, subdivision (a)(3) because their rights were substantially prejudiced by misconduct of Judge Sabraw. We are unpersuaded.

Appellants point to two instances of purported misconduct. First, appellants contend Judge Sabraw improperly interjected during appellants' counsel's cross-examination of Sam Edgerton (counsel for DeWaay in the Mosher Class Action). During appellants' counsel's cross-examination of Edgerton, he showed Edgerton the Mosher Class Action Petition and Dr. Lally's FINRA Statement of Claims against DeWaay, and asked whether

certain allegations in the petition and the statement of claims were similar. Scottsdale's counsel objected on grounds the questions called for a legal conclusion. Judge Sabraw attempted to clarify whether counsel for appellants was asking if Edgerton believed the claims were similar when he represented DeWaay several years ago, or whether he currently believed the claims were similar while looking at the two documents. Judge Sabraw did not receive a clear response. Edgerton testified he did not think he could answer whether the claims were similar because he never compared the claims in the two documents. He explained: "I never compared [appellants' claims] to the class action" because appellants' claims were made at a later time.

Next, appellants claim Judge Sabraw "injected herself into" the direct examination of appellants "by *sua sponte* stopping their answers as 'going beyond the question' when they were clearly answering the subject that was asked of them and providing context to the question propounded." (Original emphasis.) The sole example appellants provide is the following exchange between Dr. Lally and appellants' counsel:

Q[.] And did he make a recommendation of a portfolio of products to you?

A[.] He would present a list of alternative investments that he had available, which basically every time we met with him, it turned into somewhat of a harangue, for want of a better term, to purchase in some of the investments.

At that time, I was sitting on a lot of cash because I had been wary of market downturns. The dotcom implosion had come to have an impact. I wasn't in the stock market much. And also the subsequent downturn in the early 2000s –

14

JUDGE SABRAW: I'm going to stop you, Doctor. Could you stop him?

Excuse me, Doctor. This is Judge Sabraw. I want you to listen very carefully to the question that you're asked and try to just answer that question for us because we have limited time for this. Okay?

THE WITNESS: Okay.

JUDGE SABRAW: Thank you.

[¶] . . .[¶]

Q[.] Did you think these things were – were you told by Mr. DeWaay that these things were safe or risky?

A[.] Well, he would hand out a prospectus which stated that there were some risks, but he would present them as being safe investments for an IRA situation.

In fact, at one point he called me on the phone and listed some of these –

JUDGE SABRAW: I'm going to stop you again, Doctor. Doctor, listen to me, please. You're going beyond the question. So just listen and just answer the question.

We conclude appellants fail to establish any misconduct by Judge Sabraw based on these two instances over the course of a two-day hearing, much less substantial prejudice due to the purported misconduct. (See Cal. Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, comment to std. 13 ["During an arbitration, an arbitrator may discuss the issues, arguments, and evidence with the parties or their counsel, make interim rulings, and otherwise to control or direct the arbitration. [Standard 13, stating an arbitrator must 'conduct the

15

arbitration fairly, promptly, and diligently'] is not intended to restrict these activities"].)

## DISPOSITION

The judgment is affirmed. Scottsdale is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, Acting P.J.

We concur:



COLLINS, J.



STONE, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.


16