Filed 5/16/23

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIA PEREZ et al.,<br><br>    Plaintiffs and Appellants,<br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>    Defendants and Respondents. | A165140<br><br>(Sonoma County Super. Ct. No. SCV-261649) |

Vicente and Maria Perez[1] appeal from a judgment confirming an arbitration award for Kaiser Foundation Health Plan, Inc. (KFHP), Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc. (collectively Kaiser). The Perezes contend there was no valid arbitration agreement, and therefore the trial court erred by granting Kaiser's motion to compel arbitration. They also argue the award must be vacated because the arbitrator failed to comply with his continuing duty to disclose the *results* of other cases involving Kaiser — cases initially disclosed as pending when the

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Discussion, sections I, II, and IV.

[1] For clarity, and intending no disrespect, we use first names when referring to the Perezes individually. Andrea Perez — the Perezes' 22-year-old daughter — initially filed suit, but she tragically passed away in June 2018, and her parents continued the underlying proceedings as a wrongful death and survival action.

1

arbitrator was appointed but that resolved during the Perezes' arbitration. Unpersuaded by the arguments adequately raised and supported in plaintiffs' briefs (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6), we affirm.

## BACKGROUND

Kaiser is a licensed health care service plan that provides or arranges hospital and professional health care services for plan members. Employers who offer Kaiser's health care services must distribute a document titled "Evidence of Coverage" each year to Kaiser subscribers. The document provides enrollees or subscribers with information regarding their benefits, rights, and obligations as Kaiser members. The Evidence of Coverage includes an arbitration clause, stating "Any dispute shall be submitted to binding arbitration if," as relevant here, the claim "arises from or is related to an alleged violation of any duty incident to or arising out of or relating to this *Evidence of Coverage* or a Member Party's relationship to [Kaiser], including any claim for medical or hospital malpractice." The clause further explains members — including a member's relative — enrolled in Kaiser's Evidence of Coverage "thus give up their right to a court or jury trial" unless the claim falls within certain exceptions not relevant here.

Francis Coppola Winery, LLC (Coppola) employees may select Kaiser health care coverage through Coppola's online benefits enrollment process. Employees selecting the Kaiser plan are instructed, "you must agree to the authorization agreement by clicking on the 'Save' button." The agreement allows Coppola to enroll employees in the Kaiser plan and to deduct premiums from their paychecks. It also confirms the length of health care coverage and circumstances for paying for coverage if employees terminate coverage.

2

In a separate section of the authorization agreement — titled "**Kaiser Foundation Health Plan, Inc., and Kaiser Permanente Insurance Company Arbitration Agreement**" — Kaiser notifies enrollees of a mandatory arbitration requirement.  (Fn. omitted.)  The disclosure states, in relevant part: "**I understand . . . any dispute between myself, my heirs, relatives . . . on the one hand and [KFHP], Kaiser Permanente Insurance Company (KPIC), any contracted health care providers . . . on the other hand, for alleged violation of any duty arising out of or related to . . . any claim for medical or hospital malpractice**" — such as a claim medical services "**were improperly, negligently, or incompetently rendered**" — "**must be decided by binding arbitration under California law and not by lawsuit or resort to court process.**"  (Fn. omitted.)  It continues, "**I agree to give up our right to a jury trial and accept the use of binding arbitration. I understand that the full arbitration provision is contained in the Evidence of Coverage and in the Certificate of Insurance.**"  The clause also identifies certain disputes that are not subject to binding arbitration, such as ones involving dental plans.

Under the disclosure is a notice advising employees that "By clicking the **SAVE** button below, I understand that this action will serve as my electronic signature of agreement to the conditions provided in the [KFHP] and [KPIC] Arbitration Agreement (above)."  Immediately below this notice, the web page includes a note stating, "If you do not wish to accept the arbitration agreement above you must click on the **CANCEL** button below."  Doing so returns the employee to the plan selection screen to select a different health plan.  At the bottom of the web page are three buttons, "BACK," "SAVE," and "CANCEL."

3

## I.

Coppola purchased a winery in March 2014 and hired some of the winery's employees, including Maria. Coppola wanted to quickly enroll the employees in its benefits program to prevent any lapse in benefits. New Coppola employees had an orientation where they learned about available benefit programs. Eligible employees received a welcome letter containing a summary of benefits and identifying their first-time usernames and log in information required for using the online enrollment system.

During the orientation, employees chose and signed up for benefits using Coppola laptops. Two to four employees shared one to two laptops per table. When employees logged into the online site, they could view their own basic information, select benefits, and add any dependents they wanted to cover. Three members of Coppola's human resources team were present and available to answer questions as people went through the process. Pursuant to the company's best practice, human resources employees weren't to sit at a computer and act on behalf of an employee. Records reflect Maria and Andrea were enrolled as Kaiser members as of April 1, 2014.

## II.

In 2017, Andrea filed a complaint against Kaiser alleging negligence and fraud arising out of its failure to timely diagnose and treat her aggressive cancer. Kaiser, citing Maria's membership agreement, petitioned to compel arbitration and stay the lawsuit. In her opposition, Andrea argued Kaiser failed to comply with Health and Safety Code section 1363.1, which sets forth specific requirements for disclosing arbitration agreements with health care service plans like Kaiser's. She also disputed Maria agreed to arbitrate. Maria declared she was unaware of ever signing an agreement waiving rights to a jury trial and being bound to arbitration. No one

4

explained the arbitration agreement to her. She further did not understand that clicking a "SAVE" button constituted an agreement to arbitrate claims. Although Maria admitted she had a fairly good understanding of English, she was not a native speaker and declared she could not read English well enough to understand she was agreeing to arbitration. Maria also stated she did not operate the computer; it was solely operated by a Coppola human resources employee.

During a hearing on the motion to compel arbitration, Coppola's director of people operations testified regarding the online enrollment system and benefits orientation. To start the process, employees were given a temporary password by the human resources department. To continue beyond the home page, employees needed to immediately change the temporary password to a password of their own choosing. The director assumed Maria logged into the benefit system — a screenshot of Maria's benefits page has a date and time stamp with Maria's name, the criteria for logging into the system. The director did not fill out forms on behalf of the employees; moreover, while she did not know if anyone personally assisted Maria in completing forms, she was in the room and did not see any of the other human resources team fill out the forms on behalf of employees.

Rather than testifying she did not sign up for benefits, Maria testified she did not *remember* working on one of the laptops to enroll for benefits. She noted she did not know how to use the computer. Instead, she asked an employee for assistance. She did recall she was "there signing in. And we had to sign because — because Francis Coppola wanted to help previous workers to continue so that we didn't stay without coverage."

After hearing testimony and assessing credibility, the trial court found the weight of the evidence supported the conclusion that Maria operated

a computer and personally selected the "SAVE" button to secure health insurance, thereby also indicating her agreement to arbitration. The court determined an arbitration notice would have displayed on the computer screen, and Maria would have had to click "SAVE" to enroll herself and Andrea for Kaiser benefits. And Maria *did* click "SAVE" because both she and Andrea were successfully enrolled in Kaiser. The court concluded Kaiser proved the existence of an agreement to arbitrate by a preponderance of the evidence and granted Kaiser's motion to compel arbitration.

III.

In May 2018, the Perezes and Kaiser selected an arbitrator from a list of 12 potential candidates. Both parties were sent a disclosure statement listing the arbitrator's prior and pending cases involving Kaiser, those in which he had served or was currently serving as arbitrator. In May and August 2020, the arbitrator sent notices informing the parties he had agreed to arbitrate additional cases involving Kaiser. Although these additional cases resolved during the Perezes' arbitration, the arbitrator did not disclose the outcomes to the Perezes. After an arbitration in February 2021, the arbitrator concluded Kaiser was not liable for Andrea's death.

The Perezes moved to vacate the arbitration award, arguing it was infected by bias, corruption, or fraud. According to the Perezes, the arbitrator's failure to disclose the results of previously pending cases — all resolved in favor of Kaiser — reasonably would cause a person to question his impartiality. The Perezes also argued the arbitrator engaged in ex parte communications with Kaiser during their arbitration. The trial court denied the motion, concluding the arbitrator had an initial obligation to disclose he had pending cases involving Kaiser; he was not, however, obligated to disclose their subsequent outcome. Moreover, the court determined that the

fact the arbitrator had decided three cases in Kaiser's favor during the pendency of the Perezes' arbitration would not cause a person aware of the facts to reasonably entertain a doubt the arbitrator would be impartial.

## DISCUSSION

The Perezes challenge the trial court's order compelling arbitration, arguing Kaiser's arbitration disclosure did not comply with statutory requirements. In addition, they contend we must vacate the arbitration award because the arbitrator did not disclose a ground for disqualification in violation of mandatory disclosure requirements.

I.

The Perezes contend Kaiser's arbitration agreement is unenforceable because it does not comply with Health and Safety Code section 1363.1's requirements for health care service plan arbitration disclosures. (*Cox v. Bonni* (2018) 30 Cal.App.5th 287, 299 ["An order granting a petition to compel arbitration may be reviewed on appeal from a subsequent judgment on the award"].) Indeed, violation of Health and Safety Code section 1363.1 "renders a contractually binding arbitration provision in a health service plan enrollment form unenforceable." (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 50.) Thus, the Perezes argue we must reverse the order compelling arbitration because Kaiser has not demonstrated the existence of a valid arbitration agreement. (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586.) After considering the arguments adequately raised and supported in the Perezes' briefs, we conclude none provide a basis to reverse. (*Reyes v. Kosha, supra*, 65 Cal.App.4th at p. 466, fn. 6 [even when review is de novo, "it is limited to issues which have been adequately raised and supported"].)

7

The Perezes initially assert the disclosure was "not written in the clear and understandable language required by [Health and Safety Code section 1363.1]." We consider an attack on the language of the disclosure to be forfeited for failure to offer reasoned argument. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["It is not our place to construct theories or arguments to undermine the judgment . . . . When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].) Other than quoting the statutory language and asserting the disclosure was not written in clear and understandable language, the opening brief fails to support the point. To the extent they provide arguments for the first time in their reply brief, we will not consider them. (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 855.)

Indeed, much of the opening brief merely quotes the relevant statutory language or recites the purpose of Health and Safety Code section 1363.1. Or it asserts violations of a statute which it concedes is inapplicable. For example, the brief sets forth requirements contained in Code of Civil Procedure section 1295 — such as the obligation to have the arbitration clause be contained in the first article of a contract, prescribing the exact language to be used in the disclosure, and requiring that additional language appear in all capital letters and be in 10-point bold red type — only to acknowledge that statute, which applies to contracts for medical services rather than health service plans, does not govern here.

The primary argument developed in the opening brief is whether the disclosure appears "immediately before the signature line . . . provided for the individual enrolling in the health care service plan." (Health & Saf. Code, § 1363.1, subd. (d).) " '[I]mmediately before' means that the arbitration

8

agreement must be typed in directly before the signature line provided for the individual on the enrollment form *without any intervening language.*" (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1426.) The disclosure here is typed directly before the sentences explaining that clicking the "SAVE" button serves as an electronic signature on the arbitration agreement, i.e., a functional signature line. (*Kuntz v. Kaiser Foundation Hospital* (2021) 62 Cal.App.5th 1135, 1149.) While there is a separate paragraph identifying exceptions to the arbitration provision, such as claims related to dental services and out-of-area indemnity, this is part of the arbitration disclosure itself. Thus, the disclosure is unlike the one disapproved of in *Robertson* — there the arbitration disclosure was directly followed by paragraphs prohibiting HIV testing as a precondition for insurance and notifying enrollees about presenting fraudulent claims. (*Robertson*, at p. 1423; see also *Malek v. Blue Cross of California*, *supra*, 121 Cal.App.4th at p. 62 [arbitration disclosure violated Health & Saf. Code, § 1363.1, subd. (d) where signature line was immediately after a paragraph authorizing release of medical information].) Thus, we are unpersuaded by this argument.

The Perezes also argue the disclosure is not "prominently displayed on the enrollment form." (Health and Saf. Code, § 1363.1, subd. (b).) The Perezes' contend the disclosure "does not 'stand out from its surroundings' " and that it "is in the same typeface as the rest of the page," "not highlighted, italicized, or bolded. It was therefore not 'prominent.' " This argument is unavailing. The quality of the copy of the disclosure in the record is rather poor. Nevertheless, we can discern it is set off from the prior section on the enrollment page, with the title "**Kaiser Foundation Health Plan, Inc., and Kaiser Permanente Insurance Company Arbitration Agreement**,"

9

in bold, underlined text.  (Fn. omitted.)  Moreover, the remaining text of the arbitration disclosure is in bold type in contrast to the rest of the text on the page, which is in regular type.  (*Imbler v. PacifiCare of Cal., Inc.* (2002) 103 Cal.App.4th 567, 579 [indicating bold, underlined, or italicized text may be considered prominent].)  By using a different typeface, the disclosure stands out from the remainder of the enrollment agreement.  (See *Robertson v. Health Net of California, Inc.*, *supra*, 132 Cal.App.4th at p. 1429.)

Our opinion should not be read as endorsing Kaiser's complicated and prolix arbitration disclosure, but we cannot conclude that any of the issues adequately raised and supported in plaintiffs' briefs warrants reversal. (*Reyes v. Kosha*, *supra*, 65 Cal.App.4th at p. 466, fn. 6.)

## II.

The Perezes contend Maria did not manifest assent to Kaiser's arbitration agreement by clicking the "SAVE" button during Coppola's online benefit enrollment.  According to the Perezes, a Coppola employee clicked the button, and Kaiser thus failed to demonstrate the existence of an arbitration agreement.  We disagree.  Substantial evidence supported the trial court's finding Maria agreed to the arbitration clause.

"Petitions to compel arbitration are resolved by a summary procedure that allows the parties to submit declarations and other documentary testimony and, at the trial court's discretion, to provide oral testimony." (*Flores v. Evergreen at San Diego, LLC*, *supra*, 148 Cal.App.4th at p. 586.) If the facts are undisputed, we independently review the court's ruling that a valid arbitration agreement exists.  (*Ibid*.)  But where more than one reasonable inference may be drawn from the facts — as is the case here given the factual dispute about whether Maria signed the arbitration agreement — we review the court's ruling for substantial evidence.  (*Cox v. Bonni*, *supra*,

10

30 Cal.App.5th at p. 299; *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211.) We do not reweigh the evidence and instead construe all reasonable inferences in favor of the judgment and resolve evidentiary conflicts in favor of the prevailing party. (*Cox*, at pp. 299–300; *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067.)

At the outset, we reject the Perezes' suggestion there was no contract between Maria and Kaiser because there was no paper contract or actual signature line on the enrollment agreement. "A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation." (Civ. Code, § 1633.7, subd. (b).) And an electronic signature is attributable to a person if it was the act of the person. (*Id.*, § 1633.9, subd. (a).) "The act of the person may be shown *in any manner*, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (*Id.*, § 1633.9, subd. (a), italics added.) Here, there was no dispute that Maria enrolled and received Kaiser benefits. Rather, the relevant issue here is whether substantial evidence established the authenticity of Maria's electronic signature on the arbitration agreement — that is, whether she clicked the "SAVE" button or any other method demonstrating the electronic signature was attributable to Maria. (*Fabian v. Renovate America, Inc.*, *supra*, 42 Cal.App.5th at p. 1068.) Substantial evidence supports the trial court's conclusion Maria electronically signed the arbitration agreement.

The trial court's finding that Maria personally operated the computer and clicked the "SAVE" button is a "classic example of a trial court drawing a conclusion from conflicting evidence." (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 545 (*Bannister*).) Coppola's director of people

11

operations explained employees were provided a temporary password to access the benefit enrollment system but were required to immediately choose their own unique passwords to continue through the enrollment process. (*Id.* at p. 547 [assignment of "a unique, private user name and password" was evidence employee was the only person who could have accessed an onboarding portal and signed an arbitration agreement].) Employees could not continue past the home page if they did not set up their own individual passwords.

The director noted the last screen of the online benefits enrollment process for Kaiser coverage displays the arbitration disclosure on the employee/subscriber's computer screen. To continue with the enrollment process, employees must click the "SAVE" button immediately underneath the arbitration notice. If the subscriber fails to click "SAVE," the enrollment process does not continue. Because Maria and Andrea were successfully enrolled as Kaiser members, the director noted Maria "would have had to click 'SAVE.'" The director stated she did not observe any Coppola human resources employees operating the computers on behalf of any employees. (Compare with *Bannister*, *supra*, 64 Cal.App.5th at pp. 546–547 [plaintiff did not operate the computer during the onboarding process and the employer remotely signed the agreement for employees who were not physically present].)

Although Maria initially declared she did not have a computer, did not log in, and a Coppola employee pressed the computer buttons, Maria later testified she was unable to remember whether she operated a computer or pushed any buttons to sign up for Kaiser benefits. She further admitted being in the room for the benefits orientation, noting "we were there signing in." She continued, "And *we had to sign* because — because Francis Coppola

12

wanted to help previous workers to continue so that we didn't stay without coverage." (Italics added.) And while Maria declared she could not read English well enough to understand she was agreeing to arbitration, substantial evidence supports the trial court's conclusion that clicking the "SAVE" button was "the act of" Maria and "it is not our role to second guess the trial court's factual determinations." (Civ. Code, § 1633.9, subd. (a); *Bannister, supra*, 64 Cal.App.5th at p. 545.)

The cases cited by the Perezes do not compel a different result. The cases are distinguishable from the facts of this case; in some instances, for example, the trial court found the plaintiff did not sign the arbitration agreement. (See, e.g., *Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 650 [finding the arbitration agreement unconscionable mooted any question regarding whether plaintiff actually signed it]; *Fabian v. Renovate America, Inc.*, *supra*, 42 Cal.App.5th at p. 1069 [finding defendant's assertion plaintiff signed arbitration agreement unsupported where defendant did not present any evidence regarding how the contract was presented to the plaintiff, how plaintiff's signature was placed on the contract, or the process used to verify plaintiff's electronic signature]; *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 788 [no express agreement to arbitrate where plaintiff employee signed an acknowledgement that he received an employee handbook and other documents, but did not sign the employee handbook which contained the arbitration provision].)

To the extent the Perezes, relying on *Berman v. Freedom Financial Network, LLC* (9th Cir. 2022) 30 F.4th 849, argue clicking a "SAVE" button cannot be considered a signature expressing consent, we disagree. *Berman* —

13

addressing the manifestation of assent to terms and conditions in the context of a "browsewrap" agreement[2] — noted the plaintiffs' act of clicking on a large, green "continue" button alone does not indicate assent. (*Id.* at p. 858.) Rather, the user must be "explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." (*Id.* at p. 857.) Here, Maria was so informed. The notice stated, "By clicking the 'Save' button, you are hereby acknowledging your acceptance of this authorization agreement." (*Id.* at p. 858 [notice defect remedied by including language "By clicking the Continue>> button, you agree to the <u>Terms & Conditions</u>"].) We do observe, however, Maria's assent might have been more easily determined had the button read, "I agree," rather than, "Save."

The Perezes fail to persuade there was not an enforceable arbitration agreement or that the trial court erred by granting Kaiser's motion to compel arbitration.

## III.

The Perezes contend we must vacate the arbitration award because the arbitrator failed to disclose the outcome of other Kaiser cases he was simultaneously arbitrating that were resolved in Kaiser's favor after his appointment. As the Perezes correctly state, the failure to disclose a ground for disqualification on a timely basis is a ground for vacating an arbitration award. (Code Civ. Proc.,[3] §§ 1281.9, subd. (a), 1286.2, subd. (a)(6)(A); *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 381 (*Haworth*).) But after independently reviewing the disclosure statute, we conclude the arbitrator

---

[2] Browsewrap agreements involve websites that offer "terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." (*Berman v. Freedom Financial Network, LLC*, *supra*, 30 F.4th at p. 856.)

[3] Undesignated statutory references are to the Code of Civil Procedure.

did not have a duty to disclose the postappointment results of arbitration cases that were pending at the time of his appointment. (*Haworth*, at p. 383 [de novo review on issues concerning arbitrator disclosures].)

Arbitrators must "disclose to the parties any grounds for disqualification" to "ensure that a neutral arbitrator serves as an impartial decision maker." (*Haworth*, *supra*, 50 Cal.4th at p. 381, fn. omitted.) Within 10 days of receiving notice of an arbitrator's proposed nomination or appointment, the proposed arbitrator must "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." (§ 1281.9, subds. (a)–(b).) Section 1281.9 identifies a list of potentially disqualifying information that must be disclosed. Among other things, proposed arbitrators must disclose "any ground specified in Section 170.1 for disqualification of a judge" and "matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council." (§ 1281.9, subd. (a)(1), (2).) "Based upon these disclosures, the parties are afforded an opportunity to disqualify the proposed neutral arbitrator." (*Haworth*, at p. 381; § 1281.91, subds. (b), (d).)

Relevant here, proposed arbitrators must disclose "all prior or pending . . . cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator, and the results of each case arbitrated to conclusion." (§ 1281.9, subd. (a)(4).) "Prior cases" are those "in which an arbitration award was rendered within five years prior to the date of the proposed nomination or appointment." (*Id.*, subd. (d).) By definition, prior cases — rather than pending cases — are the only types of cases that are resolved prior to the date of appointment. Thus, under the plain terms of the statute, within 10 days of

15

their appointment or nomination, proposed arbitrators must disclose their services as a neutral arbitrator involving a party or lawyer for a party to the current arbitration in pending cases, prior cases, and the results for the resolved *prior* cases. The proposed arbitrator cannot disclose the results of a pending case — those cases are unresolved prior to the date of appointment.

The California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, standard 7 addresses the same initial disclosure duties as section 1281.9. (Undesignated references to standards are to the Ethics Standards for Neutral Arbitrators; see also § 1281.85, subd. (a) [requiring neutral arbitrators to comply with ethics standards adopted by the Judicial Council].) Contrary to the Perezes' assertions, standard 7 imposes no requirement that the arbitrator disclose the resolution of separate cases that were pending at the time of the arbitrator's appointment and completed during the current arbitration. Like section 1281.9, standard 7 mandates disclosure of certain information if "the arbitrator is serving or has served" as a neutral or party-appointed arbitrator in a prior or pending case "involving a party to the current arbitration or a lawyer for a party." (Std. 7(d)(4)(A)– (B).) Arbitrators must disclose the names of the parties and attorneys in each prior or pending case. (Std. 7(d)(4)(B)(i).) But they are only required to disclose the "results of each *prior* case arbitrated to conclusion." (Std. 7(d)(4)(B)(ii), italics added.)

Although standard 7 does not define "prior cases" for disclosures related to service as an arbitrator for a party, it expressly incorporates the statutory disclosure requirements. (Std. 7(a), (d)(5)(A) [defining "prior case" only for required disclosures regarding a proposed arbitrator's compensated

16

service as a dispute resolution neutral other than an arbitrator].)[4] Specifically, it states, "[t]o the extent . . . [standard 7] addresses matters that are also addressed by statute, it is intended to include those statutory disclosure requirements, not to eliminate, reduce, or otherwise limit them." (Std. 7(a).)  Indeed, aside from noting several areas that standard 7 expands upon or clarifies that are not relevant here, standard 7 "simply consolidates and integrates those existing statutory disclosure requirements [in section 1281.9] by topic area."  (Com. to std. 7.)  Incorporating section 1281.9's definition of "prior cases," standard 7 requires disclosing cases in which "an arbitration award was rendered within five years *prior to the date of the proposed nomination or appointment*."  (§ 1281.9, subd. (d), italics added.) Contrary to the Perezes' assertions, such a reading does not render superfluous the requirement that an arbitrator must disclose case information regarding prior or pending cases in which the arbitrator "is serving or has served."  (Std. 7(d)(4)(B).)  Read together, the provisions require disclosing case information on pending cases — in which the arbitrator "is serving" — and prior cases — in which the arbitrator has served — as a neutral or party-appointed arbitrator.

Relying on a dictionary definition of the word "prior," the Perezes argue that once a pending case concludes, it becomes a " 'prior' case" and the results

---

[4] Standard 7, subdivision (d)(5)(A) defines " 'prior case' " as one "in which the arbitrator concluded his or her service as a dispute resolution neutral within two years before the date of the arbitrator's proposed nomination or appointment."  While the time period set forth in this provision — applicable to service as a dispute resolution neutral other than an arbitrator — is shorter than the time period set forth in section 1281.9, subdivision (d) — applicable to service as an arbitrator — in both, the period of time runs up to, and stops at, "the date of the arbitrator's proposed nomination or appointment."  (Std. 7(d)(5)(A); see § 1281.9, subd. (d).)

must be disclosed.  "But we do not start and end statutory interpretation with dictionary definitions."  (*Department of Finance v. Commission on State Mandates* (2022) 85 Cal.App.5th 535, 567.)  Rather, the "meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible."  (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)  Here, the Legislature expressly defined "prior cases" — cases "in which an arbitration award was rendered within five years *prior to the date of the proposed nomination or appointment*" (§ 1281.9, subd. (d), italics added) — and the standards incorporated that definition for required disclosures.  We apply that definition here.

The fact that — under standard 7, subdivision (f) — arbitrators have a continuing duty to disclose disqualification grounds until the conclusion of the arbitration proceeding does not compel a different result.  (See *Gray v. Chiu* (2013) 212 Cal.App.4th 1355, 1363.)  "An arbitrator's duty to disclose the matters described in subdivisions (d)" — addressing among other things, service as an arbitrator for a party or lawyer for a party — "and (e)" of standard 7 — addressing among other things, professional discipline — "is a continuing duty, applying from service of the notice of the arbitrator's proposed nomination or appointment until the conclusion of the arbitration proceeding."  (Std. 7(f); *Honeycutt v. JPMorgan Chase Bank, N.A.* (2018) 25 Cal.App.5th 909, 922.)  Arbitrators must disclose such a matter within 10 calendar days after becoming aware of it.  (Std. 7(c)(2).)  But again, the standards do not contain language regarding a duty to disclose the outcome of previously pending cases.  None of the cases the Perezes cite involve disclosing the later *results* of arbitrations that were pending — and disclosed — at the time of the proposed nomination or appointment.  (See,

18

e.g., *Honeycutt*, at p. 927 [violation of ethical standards where arbitrator accepted offers to serve as a neutral in eight new cases involving defendant's counsel, but only disclosed four of the cases]; *Jolie v. Superior Court* (2021) 66 Cal.App.5th 1025, 1043 [temporary judge failed to comply with continuing ethical obligation to disclose professional relationship with parties or counsel].) And none of the Perezes' additional arguments alter this conclusion.

IV.

Finally, the Perezes contend we must vacate the arbitration award based on the arbitrator's bias. According to the Perezes, the arbitrator was required to disclose the results of the three previously pending cases because they were matters falling under section 1281.9's broad disclosure requirement — something that could cause a person aware of the facts to reasonably entertain a doubt the arbitrator would be impartial. (§ 1281.9, subd. (a).) We disagree.

An arbitrator's disclosure obligations are not limited to the grounds identified in section 1281.9, subdivision (a)(1) through (6). (*Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 62–63.) A person appointed as an arbitrator must disclose "any matter that reasonably could create the appearance of partiality." (*Haworth, supra*, 50 Cal.4th at p. 381; § 1281.9, subd. (a).) Determining whether a matter must be disclosed requires focusing on a reasonable person's perception of bias — an objective test. (*Haworth*, at pp. 385–386.) Actual bias is not required. (*Ibid.*) "An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased for or against a party for a particular reason." (*Betz v. Pankow* (1995) 31 Cal.App.4th 1503, 1511.) Clearly establishing the appearance of bias is a heavy burden, and we review

19

the issue de novo.  (*Haworth*, at pp. 385–386, 389 [whether an arbitrator was required to disclose a particular matter is a mixed question of fact and law].)

On the facts here, a person aware of the results of the three cases in favor of Kaiser could not reasonably believe the arbitrator was biased against the Perezes.  The cases — all addressing allegations of medical malpractice against Kaiser — involved application of case law to the facts.  In one of the decisions, in which the physician ordered an immediate CT scan and physical examination after certain symptoms were reported, the arbitrator found the testimony of the claimant's expert equivocal on whether the standard of care required ordering an MRI, the critical issue in the case.  In another case, the arbitrator noted the claimant failed to demonstrate her injury resulted from Kaiser's violation of the standard of care.  Specifically, she did not object to any testimony from Kaiser's expert regarding a surgical procedure, challenge evidence regarding the procedure, offer any expert evidence regarding the standard of care related to the procedure, or offer evidence showing how the standard of care was violated.  In the third case, after reviewing the facts, the arbitrator determined the claimant's condition was not caused by professional negligence, but instead by prior history of chronic pain and postsurgery calcification.  There is no indication that these decisions lacked merit or were based on factors beyond the evidence.  (*Haworth*, *supra*, 50 Cal.4th at p. 389 [" 'Impartiality' entails the 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind' "].)  The Perezes' conclusory statements that cases in favor of a party indicates partiality do not demonstrate otherwise.

We reject the Perezes' remaining arguments.  First, in conclusory fashion, they state the results of the pending cases demonstrate the arbitrator's ongoing, financial relationship with Kaiser and is indicative of

20

bias. But the initial disclosures notified the Perezes about the arbitrator's previous involvement in matters concerning Kaiser, yet the Perezes did not disqualify the arbitrator at that time. This appears to be a search "for potential disqualifying information only after an adverse decision has been made." (*Haworth, supra*, 50 Cal.4th at p. 395.) Second, we reject the novel argument the arbitrator engaged in ex parte communications with Kaiser because the arbitrator rendered the other awards in Kaiser's favor without notifying the Perezes. The Perezes have not identified any ex parte communications the arbitrator initiated, permitted, or considered outside the presence of all the parties *concerning the Perezes' arbitration.* (Std. 14(a); compare with *Grabowski v. Kaiser Foundation Health Plan, Inc.* (2021) 64 Cal.App.5th 67, 72, 79 [vacating arbitration award where arbitrator's ex parte joke with defense counsel about a plaintiff's inability to effectively represent herself could result in a reasonable belief the arbitrator was biased against self-represented litigants].)

The trial court did not err when it denied the motion to set aside the arbitration award for bias.

## DISPOSITION

The judgment is affirmed. In the interest of justice, the parties are to bear their own costs.

21

_____

Rodríguez, J.

WE CONCUR:


_____

Tucher, P. J.


_____

Petrou, J.


A165140

Superior Court of Sonoma County, Hon. Jennifer V. Dollard.

Law Office of Douglas C. Fladseth and Douglas C. Fladseth; Evans Kingsbury and Noreen M. Evans, for Appellants.

Rankin, Shuey, Ranucci, Mintz, Lampasona & Reynolds, S. Bradford Harper; Marion's Inn, Mark Palley and Yvonne M. Pierrou, for Respondents.